**Affirmed and Memorandum Opinion filed May 14, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-01084-CV

### IN THE INTEREST OF A.M.T., A CHILD

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-05757J**

### MEMORANDUM OPINION

Appellant A.T. ("Father") appeals the trial court's final decree terminating his parental rights with respect to his child A.M.T. ("Ana").[1] The trial court terminated Father's parental rights on predicate grounds of constructive abandonment and failure to comply with the service plan for reunification. *See generally* Tex. Fam. Code Ann. § 161.001(b)(1)(N) and (O). The trial court further found that termination of Father's rights was in Ana's best interest. In three issues, Father challenges the

---

[1] Ana is a pseudonym. Pursuant to Texas Rule of Appellate Procedure 9.8, we use fictitious names to identify the minor and other family members involved in this case. *See* Tex. R. App. P. 9.8.

legal and factual sufficiency of the evidence to support the trial court's findings on each predicate ground, as well as the best interest finding. Father does not challenge the appointment of the Texas Department of Family and Protective Services as Ana's managing conservator. Because we conclude the evidence is legally and factually sufficient to support the trial court's findings, we affirm the judgment.

**BACKGROUND**

## I.        Pretrial Proceedings

Ana was born November 26, 2017. Two days later the Department received a referral of neglectful supervision because both Mother and the newborn Ana tested positive for opiates. Mother admitted to taking someone else's medication while pregnant with Ana. An anonymous caller spoke with the reporter, a social worker at the hospital, about Mother and her history of drug use in Ohio. The anonymous caller mentioned two other children in Ohio and possible heroin use by Mother. The referral noted that another intake referral was made to the Ohio Child Service Bureau reporting that Mother had an open case involving her three-year-old son.

Ana experienced opiate withdrawal symptoms at birth. Mother's only support in Texas was the friend who gave her opiates. Ana's maternal grandmother was not a suitable placement alternative because the grandmother had no stable housing and a history of alcoholism. The maternal great-grandmother was contacted but refused placement because she already had two of Mother's children in her care. Mother provided Father's name but did not have contact information for him. Mother told investigators that Father lived in Ohio and Mother's only method of communication with Father was through Facebook Messenger. Mother was unwilling or unable to provide any alternate placement for Ana. Mother fled the hospital shortly after Ana's birth.

The Department requested to be named temporary managing conservator of Ana based on its belief that there was a continuing danger to Ana's physical health or safety if she were returned to Mother and reasonable efforts had been made to prevent removal.

Initially a family service plan was created for Father in which he was required to complete a DNA test to establish paternity. The trial court signed a status hearing order on February 1, 2018, which stated that Father had reviewed and understood the service plan and had been advised that "unless he is willing and able to provide the child with a safe environment, even with the assistance of a service plan, within the reasonable period of time specified in the plan, his parental and custodial duties and rights may be subject to restriction or to termination or the child may not be returned to him." Father completed DNA testing and the trial court signed an ordering establishing paternity. On February 28, 2018 Father was served with the petition for termination.

On October 19, 2018, a permanency report was filed by the Department's caseworker. The report noted that DNA testing established that Father was Ana's father. The report further noted that Father's drug test conducted in May 2018 was positive for cocaine. The report contained an address for Father and Father's attorney and noted that the Department notified Father and Mother that the Department was named temporary managing conservator of the child. The report also noted that the caseworker mailed a new family service plan to Father in which Father was required to "complete parenting classes, maintain stable housing and income, random drug test, [and] substance abuse assessment." The caseworker requested that the family service plan be made an order of the court. At that time the Department had conducted a "due diligence" search for Mother but was unable to locate her.

3

## II.  Trial

The parties proceeded to a bench trial on November 8, 2018. Neither of Ana's parents appeared for trial. The returns of citation, family service plans, and Father's positive drug test results were admitted into evidence without objection.

Jasmine Smith, the conservatorship caseworker, testified that Ana was ten or eleven months' old at the time of trial. Ana went through opiate withdrawal after birth but had not experienced developmental issues as a result of being born dependent on opiates. Ana has been with her foster family since leaving the hospital after birth.

After the amended service plan was created Father participated in one random drug test, which yielded positive results for cocaine. Smith testified that whenever she spoke with Father he did not have stable housing for Ana. Father also told Smith he recently graduated from school and that he was unable to find a job because he was in school. Father lived in Ohio and was aware that Ana was living in the Department's care but never visited her. The Department ensured that both parents had contact information for service providers to aid in completion of the service plan. When the service plan was created Smith explained to Father that his rights could be restricted or terminated if he did not comply with the service plan. Smith testified that the Department made reasonable efforts to return Ana to Father.

With regard to Ana's best interest, Smith testified that the foster parents are the only parents Ana has known. Ana is happy and giggling with her foster father and is bonded with him. The foster parents want to adopt Ana, have a safe, stable home, and are willing to provide for Ana in the future.

On cross-examination Smith was asked whether Ana's paternal grandfather had been considered as a potential placement for Ana. Smith testified that Father

4

asked that the grandfather be considered, and Father told Smith he would advise of a date on which a home study could be conducted. Smith explained to Father that Ana's paternal grandfather could be considered for placement if the Department could conduct a home study. Smith told Father that she needed to schedule the visit in advance because it would require flying to Ohio. The home visit was not conducted because Father did not follow up with Smith about a home visit.

Sandra Nassif, the Child Advocates volunteer, recommended termination of the parents' rights due to "lack of proof to show a stable environment." Nassif had visited Ana and her foster parents. Ana was very happy and developmentally on track. If Ana were to develop any special needs due to her *in utero* drug exposure the foster parents would be able to access services to care for her.

At the conclusion of testimony, the trial court terminated Father's rights based on the predicate grounds of constructive abandonment and failure to follow a service plan. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N) & (O).

## STANDARDS OF REVIEW

The involuntary termination of parental rights implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Because of the severity and permanency of terminating the parental relationship, Texas requires clear and convincing evidence to support such an order. *See generally* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002).

Father challenges on appeal the legal and factual sufficiency of the evidence supporting the trial court's order terminating Father's parental rights pursuant to Texas Family Code section 161.001(b). Section 161.001(b) permits the termination of a parent-child relationship if the trial court finds by clear and convincing evidence

that (1) one or more predicate acts enumerated in section 161.001(b)(1) was committed, and (2) termination is in the best interest of the child. "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264.

Reviewing Father's legal sufficiency challenge under the clear-and-convincing evidentiary standard, we "should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we do not substitute our judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d. 105, 108 (Tex. 2006) (per curiam).

### ANALYSIS

Father asserts that the evidence is legally and factually insufficient to support the trial court's predicate termination findings with respect to constructive abandonment and failure to comply with the service plan for reunification. *See*

6

*generally* Tex. Fam. Code Ann. § 161.001(b)(1)(N) & (O). Father also challenges the trial court's finding that termination of his parental rights was in Ana's best interest. We address these challenges below.

## I.      Predicate Termination Findings

The trial court made predicate termination findings pursuant to Texas Family Code section 161.001(b)(1)(N) and (O). Under section 161.001(b)(1), parental rights may be terminated if the fact finder finds by clear and convincing evidence that the parent has (*inter alia)*:

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and
>
>> (i) the department has made reasonable efforts to return the child to the parent;
>>
>> (ii) the parent has not regularly visited or maintained significant contact with the child; and
>>
>> (iii) the parent has demonstrated an inability to provide the child with a safe environment; [or]
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for abuse or neglect of the child[.]"

Tex. Fam. Code Ann. § 161.001(b)(1)(N) & (O).

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there also is a finding that termination is in the child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We address the trial court's constructive abandonment finding under subsection 161.001(b)(1)(N).

7

To prove constructive abandonment, clear and convincing evidence must establish that the child has been in the custody of the Department for at least six months and: (1) the Department made reasonable efforts to return the child to the parent; (2) the parent has not regularly visited or maintained significant contact with the child; and (3) the parent has demonstrated an inability to provide the child with a safe environment. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N). The first element focuses on the Department's conduct; the second and third elements focus on the parent's conduct. *In re A.L.H.*, 468 S.W.3d 738, 744 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Father does not challenge the sufficiency of the evidence to support the finding that Ana was in the Department's care for more than six months.

## A.     Reasonable Effort to Return Child to Parent

In addressing the first element, we note that returning a child to a parent under section 161.001(b)(1)(N)(i) does not necessarily mean that the child must be physically delivered to the parent. *In re V.D.A.*, No. 14-14-00561-CV, 2014 WL 7347776, at *3 (Tex. App.—Houston [14th Dist.] Dec. 23, 2014, no pet.) (mem. op.). Implementation of a family service plan by the Department is considered a reasonable effort to return a child to its parent. *Id.*; *see also In re A.L.H.*, 468 S.W.3d at 744; *In re K.G.*, 350 S.W.3d 338, 354 (Tex. App.—Fort Worth 2011, pet. denied). In this case, the Department created a service plan for Father and notified him of the plan. The original service plan required Father to submit to DNA testing, which he did. The Department then amended the service plan to require Father to complete parenting classes, maintain stable housing and income, submit to random drug testing, and participate in a substance abuse assessment.

Father's first service plan, requiring DNA testing, was admitted into evidence. The amended service plan was not admitted into evidence and does not appear in our record. The record reflects, however, that the trial court signed orders making

the service plan and any amended plan an order of the court and requiring compliance with those orders. The record further reflects that Father was made aware of the amended service plan and completed some of the tasks required of the plan.

A family service plan is designed to reunify a parent with a child who has been removed by the Department. *Liu v. Dep't of Family & Protective Servs.*, 273 S.W.3d 785, 795 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A service plan must, among other things, (1) be specific; (2) state the goal of the plan, which may be the return of the child to the child's parents; and (3) state the actions and responsibilities necessary for the child's parents to take to achieve the plan goal. *See* Tex. Fam. Code Ann. § 263.102. The trial court "shall incorporate the original and any amended service plan into the orders of the court." Tex. Fam. Code Ann. § 263.106.

The record reflects a status hearing order signed by the trial court February 1, 2018 in which the court found that Father had reviewed and understood the service plan and had been advised that unless he was willing and able to provide Ana with a safe environment, even with the assistance of a service plan, within the reasonable period of time specified in the plan, his parental and custodial duties and rights might be subject to restriction or termination. The status hearing order also approved the visitation plan for Father and made the plan an order of the court. On May 3, 2018, the trial court found that Father complied with the original service plan requiring DNA testing.

On October 8, 2018, the caseworker filed a permanency report to the court in which she noted that Father participated in a drug screening in May 2018 and that she mailed a new family plan of service to Father, which requested that Father complete parenting classes, maintain stable housing and income, submit to random

9

drug testing, and participate in a substance abuse assessment. On November 8, 2018, the trial court's permanency hearing order found that Father had not complied with the services requested by the new service plan.

Although the Department did not include the amended service plan in the record before this court, the record reflects that the Department implemented an amended plan and mailed it to Father. According to the caseworker's report and the trial court's orders, the record reflects that Father knew what was required by the service plan and was informed of the consequences of a failure to follow the plan. Father submitted to two requests for random drug testing and the Department supplied him with contact information for service providers to aid in completion of other tasks required by the plan. By implementing a family service plan and notifying Father of the plan and the consequences of failure to comply with the plan, the Department met its burden on the first element. We conclude a reasonable trier of fact could have formed a firm belief or conviction that the Department made reasonable efforts to return the child to Father. *See In re A.L.H.*, 468 S.W.3d at 744.

### B.    Regularly Visit or Maintain Significant Contact with Child

With regard to Father's visitation, the second element, Father admits he never visited Ana but argues that he showed interest in her by submitting to DNA testing. The record reflects that Father never met Ana, much less visited her after her birth. Notwithstanding Father's submission to DNA testing we hold the evidence is both legally and factually sufficient to show that Father failed to maintain significant contact with Ana. This court and others have found sufficient evidence of constructive abandonment with greater levels of contact with the child than Father had in this case. *See In re T.G.*, No. 14-09-00299-CV, 2010 WL 1379977, at *7 (Tex. App.—Houston [14th Dist.] Apr. 8, 2010, no pet.) (mem. op.) (finding sufficient evidence of constructive abandonment where Mother visited "only occasionally");

10

*In re R.M.*, No. 14-02-00221-CV, 2003 WL 253291, at *5 (Tex. App.—Houston [14th Dist.] Feb. 6, 2003, no pet.) (mem. op.) (finding sufficient evidence of constructive abandonment where Mother visited child six times while the termination case was pending); *In re H.R.*, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.) (finding sufficient evidence of constructive abandonment where parent's visits were intermittent); *In re P.R.*, 994 S.W.2d 411, 416 (Tex. App.—Fort Worth 1999, pet. dism'd w.o.j.) (finding sufficient evidence of constructive abandonment where parent had numerous, yet sporadic visits).

## C. Inability to Provide a Safe Environment for the Child

With regard to the third element, Father argues the Department "could have been more proactive in pursuing a home study on the paternal grandfather" and "should have made reasonable efforts to work with [him] toward reunification."

The record reflects that Father did not provide evidence of stable housing, employment, or income. Smith testified that she was willing to travel to Ohio to conduct a home study on Ana's paternal grandfather. Smith relied on Father to provide a date certain when the grandfather's home would be available. Smith was unable to conduct the study because Father failed to communicate with her.

Because Father failed to provide Ana with any home, much less a safe, stable home, the evidence is legally and factually sufficient to support the trial court's finding of constructive abandonment. *See In re V.D.A.*, 2014 WL 7347776, at *9 (finding sufficient evidence of constructive abandonment when Father did not provide proof of income or stable housing); *In re T.M.*, No. 02-09-145-CV, 2009 WL 5184018, at *4–*5 (Tex. App.—Fort Worth Dec. 31, 2009, pet. denied) (mem. op.) (holding evidence legally and factually sufficient to support inability to provide safe environment finding when father failed to complete service plan, did not attempt to find a place for children to live, and did not give foster mother money to care for

children); *M.C. v. Texas Dept. of Family & Protective Services*, 300 S.W.3d 305, 310 (Tex. App.—El Paso 2009, pet. denied) (holding sufficient evidence demonstrated an inability to provide the child with a safe environment when mother failed to provide basic necessities for child and had no permanent housing or employment).

As to Father's factual sufficiency challenge, considering the entire record, we conclude that any disputed evidence was not so significant as to prevent the trial court from forming a firm belief or conviction that Father constructively abandoned Ana. *See In re J.O.A.*, 283 S.W.3d at 345. Thus, the evidence was both legally and factually sufficient to support the trial court's finding pursuant to Family Code section 161.001(b)(1)(N). *See In re A.K.L.*, No. 01-16-00489-CV, 2016 WL 7164065, at *9 (Tex. App.—Houston [1st Dist.] Dec. 8, 2016, pet. denied) (mem. op.).

Because we conclude the evidence is legally and factually sufficient to support the trial court's finding pursuant to Family Code section 161.001(b)(1)(N), we need not address Father's second issue challenging the other basis for termination of his parental rights under section 161.001(b)(1)(O). *See In re A.V.*, 113 S.W.3d at 362 ("Only one predicate finding under section [161.001(b)(1)] is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). We overrule Father's issue challenging the trial court's finding of constructive abandonment and do not address Father's issue challenging his failure to comply with the family service plan.

## II.     Best Interest of the Child

Father also challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in Ana's best interest.

The fact finder may consider the following factors to determine the best interest of the child: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (Supp.) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment); *In re E.R.W.*, 528 S.W.3d at 266.

Courts apply a strong presumption that the best interest of the child is served by keeping the child with her natural parents and the burden is on the Department to rebut that presumption. *In re D.R.A.*, 374 S.W.3d at 531. Prompt and permanent placement in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

Multiple factors support the trial court's finding that termination of Father's parental rights is in Ana's best interest.

## A.    Desires of the Child

Father argues that "the desires of the child presumably would be to remain in her Father's life." Ana was approximately one year old at the time of trial and had been living with her foster parents for most of her life. The record therefore does not reflect Ana's desires. When children are too young to express their desires, the fact finder may consider whether the children have bonded with their caregiver, are well-cared for by them, and have spent a minimal amount of time with a parent. *In re*

*J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Testimony at trial showed that Ana had bonded with the foster parents who were the only parents she ever knew. Mother fled the hospital shortly after Ana's birth and Father never met her. There is no evidence, however, that Ana has bonded with Father because he has been absent since her removal at birth. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well cared for by the foster family, and have spent minimal time with a parent). This factor supports the trial court's finding that termination of Father's rights is in Ana's best interest.

### B.    Present and Future Physical and Emotional Needs of the Child

Our analysis of the present and future physical and emotional needs of a child focuses on a child's innate need for permanence. *See In re D.R.A.*, 374 S.W.3d at 533. The goal of establishing a stable, permanent home for a child is a compelling government interest. *See id*.

The record reflects that Father has been completely absent from Ana's life. Father did not provide any explanation for his absence. From this past inability to be present and to meet Ana's physical and emotional needs, the fact finder may infer that Father is unable or unwilling to meet Ana's needs in the future. *See In re J.D.*, 436 S.W.3d at 118.

Father's assertions that it is "speculative" whether Ana's future physical and emotional needs will be met by her foster parents is contrary to the record. The foster family has a safe stable home, stable income, and has shown they are willing and able to care for Ana's needs in the future. This factor supports the trial court's best interest finding.

14

## C. Acts or Omissions of the Parent that May Indicate the Existing Parent-Child Relationship is Not Appropriate

Father's drug use and his absence from Ana's life also support the trial court's best interest determination. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (parent's history of drug use relevant to trial court's best interest finding); *see also In re S.R.*, 452 S.W.3d at 366 (the fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent).

The record shows that Father tested positive for cocaine while this case was pending. Continued drug use may be considered as a factor in the trial court's determination that termination is in the child's best interest. *In re B.Z.S.*, No. 14-16-00825-CV, 2017 WL 536671, at *5 (Tex. App.—Houston [14th Dist.] Feb. 9, 2017, pet. denied) (mem. op.). In addition to drug use Father failed to maintain a safe stable environment for Ana, failed to obtain and maintain a stable income, and expressed no interest in meeting his daughter. This factor weighs in favor of the trial court's best interest finding.

## D. Parental Abilities of Those Seeking Custody, and Stability of the Home or Proposed Placement

The factors concerning the parental abilities of those seeking custody, and the stability of the home or proposed placement compare the Department's plans and proposed placement of the child with the plans and home of the parent seeking to avoid termination. *See In re D.R.A.*, 374 S.W.3d at 535. The Child Advocate testified that the foster family would be able to access services to care for Ana in the event she needed additional medical care. On the other hand, the record does not contain any evidence suggesting that Father would be able to provide any care for Ana. This consideration, combined with Father's failure to attend the underlying proceedings and maintain contact with Ana, strongly supports the trial court's best interest

determination.

Viewing the evidence in the light most favorable to the judgment for our legal sufficiency analysis and all the evidence equally for our factual sufficiency analysis, we conclude that a reasonable fact finder could have formed a firm belief or conviction that termination of Father's parental rights was in Ana's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). We overrule Father's challenge to this finding.

## CONCLUSION

The evidence is legally and factually sufficient to support the trial court's predicate termination finding under section 161.001(b)(1)(N). The trial court's best interest finding is also supported by legally and factually sufficient evidence. We overrule Father's challenges and affirm the trial court's "Final Decree of Termination."

/s/    Meagan Hassan
       Justice

Panel consists of Justices Wise, Jewell, and Hassan.