

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00324-CV

IN THE INTEREST OF M.M., A CHILD

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 74,340-L1, Honorable James W. Anderson, Presiding

March 16, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellants C.K., the mother, and J.M., the alleged father, appeal a final order terminating their parental rights to M.M.[1]  Appellee is the Texas Department of Family and Protective Services.  We will overrule the appellants' issues necessary for disposition of this appeal and affirm the final order of the trial court.

---

[1] To protect the privacy of the child, we identify the parents and child in the manner we have.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2019); TEX. R. APP. P. 9.8(b)(2).

Background

According to the final hearing testimony of the Department caseworker, C.K. was charged with possession of an illegal drug. She brought M.M. with her to court for a related hearing and "appeared to be drugged—while in court." The caseworker added C.K. refused an offer of probation and was taken into custody at the courthouse leaving no one to care for M.M. At that time, J.M. was incarcerated in a federal penitentiary and there remained throughout the pendency of the underlying case.

With no one to care for M.M., the Department became involved and filed the underlying suit affecting parent-child relationship against C.K. and J.M. on July 18, 2018. At that time, M.M. was removed from C.K.'s custody and placed in Department foster care.

Final hearing in the Department's case against C.K. and J.M. was tried to the bench before an associate judge on August 19, 2019. Although C.K. and J.M. were each represented by counsel, neither appeared at final hearing. The Department presented its case through three witnesses including the assigned caseworker. Neither C.K. nor J.M. presented a witness nor did either offer documentary evidence. After the close of evidence, M.M.'s attorney ad litem recommended termination of both parents' parental rights. The trial court then rendered judgment accordingly and on September 9 signed a corresponding proposed order which became the final order of the referring court.[2]

_____

[2] A de novo hearing before the referring court was not requested. *See* Tex. Fam. Code Ann. § 201.2041(a) (West 2014) ("If a request for a de novo hearing before the referring court is not timely filed or the right to a de novo hearing before the referring court is waived, the proposed order or judgment of the associate judge becomes the order or

In the final order, the court made findings that C.K. had (1) knowingly placed or knowingly allowed M.M. to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed M.M. with persons who engaged in conduct which endangered the physical or emotional well-being of the child; (3) constructively abandoned M.M.; and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for C.K. to obtain the return of the child. It further found termination of C.K.'s parental rights was in the best interest of M.M.[3] As for J.M., the court found that he (1) constructively abandoned M.M.; (2) failed to comply with the provisions of a court order that specifically established the actions necessary for J.M. to obtain the return of the child; and (3) knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for M.M. for not less than two years from the date the Department filed its petition. It also found that termination of J.M.'s parental rights was in the best interest of M.M.[4]

## Analysis

### I. Legal Background

When the Department seeks termination of parental rights under Family Code section 161.001 it must establish, by clear and convincing evidence, that (1) the parent

---

judgment of the referring court by operation of law without ratification by the referring court").

[3] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D),(E),(N),(O), & (2) (West Supp. 2019).

[4] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N),(O),(Q) & (2).

committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.*, 280 S.W.3d 888, 894 (Tex. App.— Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003) (citations omitted).

Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002) (citing TEX. FAM. CODE ANN. § 101.007). The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ).

The trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also has the right to resolve credibility issues and conflicts within the evidence and may choose to believe all, some, or none of the testimony of any particular witness. *Id.* Additionally, the appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate

4

court must defer to the factfinder's determinations, as long as those determinations are not themselves unreasonable. *Id.*

Appellants raise legal and factual sufficiency challenges of the evidence supporting the trial court's predicate-ground findings. Under the legal sufficiency analysis, a reviewing court examines all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d at 266. The court disregards all contrary evidence the factfinder could have reasonably disbelieved or found incredible. *Id.* But, it takes into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.*

In a factual sufficiency review, the court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002). The court determines whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so the court of appeals considers whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

II. The Department's case against C.K.

*First Issue: Subsection (D) Predicate Ground Finding*

C.K.'s issues on appeal challenge the legal and factual sufficiency of the evidence supporting the four predicate-ground findings made against her. She does not challenge the trial court's best-interest finding. We turn to the sufficiency of proof supporting C.K.'s first issue, the trial court's subsection (D) finding.

Subsection 161.001(b)(1)(D) permits termination when clear and convincing evidence shows that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *see In re D.T.,* Nos. 07-19-00071-CV, 07-19-00072-CV, 2019 Tex. App. LEXIS 6079, at *6-7 (Tex. App.—Amarillo July 16, 2019, no pet.) (mem. op.) (providing analysis under subsection (D)). Subsection (D) requires a showing that the environment in which the child was placed posed a danger to the child's physical or emotional health. *In re K.C.F.,* No. 01-13-01078-CV, 2014 Tex. App. LEXIS 6131, at *32-34 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) (citation omitted). Subsection (D) concerns the child's living environment, rather than the parent's conduct, though parental conduct may produce an endangering environment. *Jordan v. Dossey,* 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). It is not necessary that a parent's conduct be directed at the child or that the child be injured, but the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk. *In re S.M.L.,* 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The proof requirement

of subsection (D) may be satisfied by "a single act or omission." *In re R.D.,* 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied). Illegal drug use and criminal activity support a conclusion that the child's surroundings endanger his or her physical or emotional well-being. *In re B.W.,* No. 07-19-00248-CV, 2019 Tex. App. LEXIS 9845, at *8 (Tex. App.—Amarillo Nov. 12, 2019, no pet. h.) (mem. op.) (citing *In re J.T.G.,* 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)). The relevant time frame under subsection (D) is prior to the child's removal. *In re O.R.F.,* 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied).

The Department's family service plan for C.K. was admitted into evidence at the final hearing. Relevant to this analysis, it stated the reason for the Department's involvement with M.M. was because C.K. "was arrested for possession and [M.M.] tested positive for cocaine." The service plan further stated, "[a]t her court appearance for her pending drug charges [C.K.] stated 'I do all drugs.' It appeared that [C.K.] was under the influence of drugs and/or alcohol as she was slurring words and falling asleep while in court and while talking to the CPS investigator. She was difficult to understand and unable to form sentences at times." C.K.'s probation officer testified that she was placed on probation in August 2018 for possession of a controlled substance. At a meeting with the probation officer in June 2019 C.K. admitted using cocaine. The caseworker testified that C.K. denied using drugs in the home where M.M. resided. After the caseworker testified M.M.'s hair follicle tested positive for cocaine the court sustained a hearsay objection. But the testimony was not stricken from the record. And as noted, documentary evidence admitted without objection indicated M.M. tested positive for cocaine. The caseworker agreed that C.K. had demonstrated an inability to provide a

safe environment for M.M. When asked to explain this opinion one of the reasons she provided was C.K.'s status as "an active drug user at this time." The caseworker further acknowledged a belief that C.K. was using drugs at the time of M.M.'s removal.[5]

This evidence authorized the trial court as fact finder to form a firm belief or conviction that at the time of M.M.'s removal C.K. was engaged in criminal behavior, the use of illegal drugs, and exposed M.M. to cocaine to a degree that the child tested positive for the substance. We conclude the evidence is legally and factually sufficient to support the trial court's subsection (D) finding. *See In re K.M.L.,* 443 S.W.3d 101, 112-13, 116 (Tex. 2014) (legal sufficiency standard); *In re A.B.,* 437 S.W.3d 498, 502-03 (Tex. 2014) (factual sufficiency standard). We overrule C.K.'s first issue.

*Second Issue: Subsection (E) Predicate Ground Finding*

We next consider C.K.'s second issue, the sufficiency of evidence supporting the trial court's subsection (E) finding.[6]

---

[5] C.K. contends that the Department's case under subsection (D) depended on conclusory testimony of the caseworker. "Unsupported, conclusory opinions of a witness do not constitute evidence of probative force." *In re A.L.H.,* 468 S.W.3d 738, 747 (Tex. App.—Houston [14th Dist.] 2015, no pet.). C.K.'s argument, however, ignores other evidence that at the time of removal two-year-old M.M. tested positive for cocaine, C.K. stated at her court appearance for a drug possession charge "I do all drugs," she appeared in court to be under the influence of drugs or alcohol because her speech was slurred and she fell asleep in court, and while talking to the Department investigator her speech was difficult to understand and she was unable to form sentences at times.

[6] As noted, only one predicate ground finding, when combined with a best-interest finding, is necessary for termination of parental rights. In cases where, as here, parental rights are terminated on multiple predicate-ground findings, including an endangerment finding, the parent is entitled to appellate review of the endangerment finding even if another finding alone is sufficient to uphold termination. *In re N.G.,* 577 S.W.3d 230, 235 (Tex. 2019) (per curiam). Due process requirements necessitate this type of review because of the consequences an endangerment finding could have on the parent's

A violation of subsection (E) is proved by clear and convincing evidence that the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Subsection (E) requires more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.,* 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied).

To endanger means to expose to loss or injury; to jeopardize. *In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996) (citing *Boyd,* 727 S.W.2d at 533). It is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). The cause of the danger to the child may be shown by the parent's actions as well as by omissions or failures to act. *Doyle v. Texas Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied). The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd,* 727 S.W.2d at 533; *In re R.W.,* 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied). The statute does not require that conduct be directed at a child or cause actual harm; rather, it is sufficient if the parent's course of conduct endangers the well-being of the Child. *Walker v. Tex. Dep't of Family & Protective Servs.,* 312 S.W.3d 608, 617 (Tex. App.—Houston

---

parental rights to other children. *Id.*; *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (providing parental rights may be terminated on clear and convincing proof the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state"). We, therefore, will now consider C.K.'s (E) ground sufficiency complaint.

[1st Dist.] 2009, pet. denied). Furthermore, the conduct does not have to occur in the presence of the child. *Id.* The conduct may occur prior to the child's birth and both before and after the child is removed by the Department. *Id.* A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize a child's present or future physical or emotional well-being. *In re S.H.,* No. 07-15-00177-CV, 2015 Tex. App. LEXIS 9731, at *6 (Tex. App.—Amarillo Sept. 16, 2015, no pet.) (mem. op.) (citing *In re D.M.,* 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.)).

Illegal drug use may support termination under subsection (E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker,* 312 S.W.3d at 617. "[A] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re K.C.F.,* No. 01-13-01078-CV, 2014 Tex. App. LEXIS 6131, at *27 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.).

It would be needlessly redundant to detail all the evidence of C.K.'s endangering conduct. C.K.'s conduct existed before removal, as shown by her behavior at a court appearance for pending drug charges and M.M.'s positive drug test for cocaine. Her conduct continued after removal, as evidenced by her admission to her probation officer that she used cocaine after returning in May 2019 from the substance abuse track in an intermediate sanctions facility; her caseworker also opined C.K. showed a demonstrated inability to provide a safe environment for M.M. because, among other things, "she is an

active drug user at this time." We conclude the evidence is legally and factually sufficient to support the trial court's subsection (E) finding.

C.K.'s second issue is overruled. It is unnecessary to the disposition of this appeal to discuss C.K.'s remaining predicate-ground challenges. *See* TEX. R. APP. P. 47.1.

III. The Department's case against J.M.

*First Issue: J.M.'s Status*

Through his first issue, J.M. argues because he was not adjudicated the father of M.M., and is not a presumed father, the trial court had no authority to terminate his parental rights under section 161.001.

J.M. is correct that the record contains no indication he was adjudicated the father of M.M. In his brief, however, he does not discuss termination of the rights of an "alleged father." Family Code section 161.002(a) provides "[e]xcept as otherwise provided by this section, the procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged father." TEX. FAM. CODE ANN. § 161.002(a) (West Supp. 2019). The Family Code does not define the term "alleged father," but in conjunction with the right of an alleged father to service of citation in a suit affecting the parent-child relationship under Family Code section 102.009(8), our supreme court has related the designation to a man alleged to be the father in a formal pleading filed in the case. *Texas Dep't of Protective & Regulatory Servs. v. Sherry,* 46 S.W.3d 857, 860 (Tex. 2001); *Kiefer v. Touris,* No. 10-03-00331-CV, 2005 Tex. App. LEXIS 5079, at *8-11 (Tex. App.—Waco June 29, 2005) (Gray, C.J. dissenting)*, rev'd on other grounds,* 197 S.W.3d 300 (Tex. 2006) (per curiam). In its petition, the Department identified J.M. as the alleged

father of M.M. While section 161.002 further provides for summary termination of an alleged biological father's parental rights when the alleged father does not assert his paternity, *In re K.W.,* No. 02-09-00041-CV, 2010 Tex. App. LEXIS 291, at *11 (Tex. App.—Fort Worth Jan. 14, 2010, no pet.) (mem. op.), the Department pursued termination of J.M.'s parental rights under the more onerous requirements of section 161.001. Under the facts here presented it was, however, free to do so and the trial court did not err in trying the case against J.M. under section 161.001. *See In re C.M.C.,* No. 14-12-00186-CV, 2012 Tex. App. LEXIS 7312, at *6-8 & n.1 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op. on reh'g) (noting section 161.002(a) provides that standards of termination of parental rights apply to termination of an alleged father's parental rights and rejecting the argument that subjecting an alleged father to termination under section 161.001(1)(O) violates principles of statutory construction and prohibitions against ex post facto laws). J.M.'s first issue is overruled.

*Second Issue: Subsection (N) Predicate Ground Finding*

Through his second issue, J.M. challenges the trial court's constructive abandonment finding under subsection (N). He contends the evidence was legally and factually insufficient to prove he did not maintain significant contact with M.M.

A parent constructively abandons a child when (1) the child has been in the permanent or temporary managing conservatorship of the State or an authorized agency for not less than six months, (2) the State or the authorized agency has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an

12

inability to provide the child with a safe environment. Tᴇx. Fᴀᴍ. Cᴏᴅᴇ Aɴɴ. § 161.001(b)(1)(N); *In re M.R.,* No. 07-13-00440-CV, 2014 Tex. App. LEXIS 6220, at *7 (Tex. App.—Amarillo June 9, 2014, no pet.) (mem. op.).

The caseworker testified J.M. had not seen M.M. since the child was age one, due to J.M.'s incarceration. In her opinion, J.M. and M.M. do not have a relationship. According to the caseworker's testimony, J.M. had not sent M.M. letters or gifts although he had inquired of her well-being. The caseworker further testified J.M. requested consideration of his mother's home as a placement for M.M., but after speaking with the caseworker J.M.'s mother rejected consideration of her home as a placement because her boyfriend is a sex offender and she did not want him to move from the premises.

J.M. argues that considering his incarceration and "the difficulty of communication" he "did the best he could under the circumstances." We find this conclusion unsupported by the evidentiary record and note that J.M. presented no evidence to contradict the Department's proof of his lack of significant contact with M.M. Indeed, the evidence supports a reasonable inference that J.M. had no contact with M.M. While J.M.'s imprisonment in an institution in another state made face-to-face interaction with M.M. unlikely, he could, nevertheless, have regularly written M.M. with the expectation of a foster parent or caseworker reading the correspondence to her. But, according to the undisputed evidence, he made no effort to have contact with M.M. through the available postal service. *See In re D.S.A.,* 113 S.W.3d 567, 574 (Tex. App.—Amarillo 2003, no pet.) ("Nor can we say that incarceration renders it impossible for the parent to maintain significant contact with the child. While the child may not be able to live with the parent in a jail cell, it would seem that the parent could nonetheless pursue a significant

relationship with the offspring through, at the very least, written correspondence."). On this record, the trial court was permitted to form a firm belief or conviction that J.M. did not maintain significant contact with M.M. We overrule J.M.'s second issue.

*Fourth Issue: Subsection (Q) Predicate Ground Finding*

Through his fourth issue, J.M. challenges the trial court's subsection (Q) finding. Specifically, he contends the evidence was legally and factually insufficient to prove his period of confinement or imprisonment will not end prior to the second anniversary of the Department's petition.

Subsection (Q) provides a trial court may terminate a parent-child relationship on a finding by clear and convincing evidence that a parent has knowingly engaged in criminal conduct that resulted in the parent's conviction for an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date the petition was filed. TEX. FAM. CODE ANN. § 161.001(b)(1)(Q); *In re A.I.F.,* No. 07-17-00464-CV, 2018 Tex. App. LEXIS 3543, at *7 (Tex. App.—Amarillo May 17, 2018, no pet.) (mem. op.). In the face of parole-related evidence, a factfinder may still form a firm belief or conviction that a parent will remain incarcerated for at least two years. *In re H.R.M.,* 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). For that matter, "[p]arole decisions are inherently speculative, and while all inmates doubtless hope for early release and can take positive steps to improve their odds, the decision rests entirely within the parole board's discretion." *Id.* (citations omitted).

When proceeding under subsection (Q), once the Department establishes the parent's knowing criminal conduct resulting in his incarceration for more than two years,

the burden shifts to the parent to produce some evidence as to how he will arrange care for the child during that period. *In re A.O.*, No. 07-16-00331-CV, 2017 Tex. App. LEXIS 1838, at *6-7 (Tex. App.—Amarillo Mar. 3, 2017, pet. denied) (mem. op.) (citing *In re G.C.*, No. 01-12-00935-CV, 2013 Tex. App. LEXIS 2115, at *14-15 (Tex. App.—Houston [1st Dist.] Mar. 5, 2013, pet. denied) (mem. op.)).

At the time of final hearing J.M. was incarcerated in a federal corrections facility in Colorado. Documents introduced by the Department indicate J.M. was convicted in 2008 of the offense of conspiracy to manufacture and utter counterfeit obligations of the United States. The underlying crime, according to other documents in evidence, required the Government prove intent to defraud. J.M. was sentenced to a twenty-four-month period of confinement followed by a three-year term of supervised release. For reasons not clearly shown by the record, in 2017 J.M. remained on supervised release. Bureau of Prisons records, also in evidence, indicate that in December 2017 J.M.'s supervision was revoked and he was committed in February 2018. One Bureau document in evidence states "proj rel mt: good conduct time release [;] proj rel dt: 03-14-2020." Another document states J.M.'s projected statutory release date is March 14, 2020 and the expiration of his full term is August 2, 2020. There was no evidence of the certainty of the projected release date or of factors that might affect that date other than the apparent reference to good conduct. The caseworker testified that J.M. told her he would be released in September 2019. She agreed, however, that she did not have official confirmation of this claim. She further testified that J.M. told her once released from prison he would be required to live in a half-way house in Midland, Texas, for five months.

The trial court as fact finder was the sole judge of the weight and credibility of the evidence. *See, e.g., In re T.H.J.,* No. 04-19-00326-CV, 2020 Tex. App. LEXIS 7, at *3 (Tex. App.—San Antonio Jan. 2, 2020, pet. filed) (mem. op.). It was entitled to disregard the caseworker's hearsay report from J.M. of his expected release in September 2019 in the face of prison records that show otherwise. Thus the trial court was entitled to form a firm belief or conviction that J.M. had engaged in knowing criminal conduct and would remain confined or imprisoned until the expiration of his full term in August 2020, more than two years from the date of the Department's petition.

J.M. did not appear for final hearing and offered no evidence demonstrating how he would provide or arrange to provide for the care of M.M. during his incarceration. The caseworker testified J.M. had not seen M.M. since the child was age one, due to J.M.'s incarceration. In her opinion, J.M. and M.M. do not have a relationship. According to the caseworker's testimony, J.M. had not sent M.M. letters or gifts although he had inquired of her well-being. The caseworker further testified J.M. requested consideration of his mother's home as a placement for M.M., but after speaking with the caseworker J.M.'s mother rejected consideration of her home as a placement because her boyfriend is a sex offender and she did not want him to move from the premises. We conclude that no evidence demonstrates how J.M. would provide or arrange to provide for the care of M.M. during his incarceration. J.M.'s fourth issue is overruled.

J.M. did not challenge the trial court's best-interest finding. Because only one predicate finding under section 161.001(b)(1) is necessary to support an order of termination where there is also a finding that termination is in a child's best interest, it is unnecessary to address the sufficiency of the evidence supporting the remaining

predicate ground found against J.M. by the trial court. *In re A.V.,* 113 S.W.3d at 362; *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.); TEX. R. APP. P. 47.1.

Conclusion

Having overruled each issue raised by C.K. and J.M. necessary for our disposition of this appeal, we affirm the trial court's final order.

Lawrence M. Doss
Justice