

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00489-CV

**IN THE INTEREST OF Z.F.S.**, a Child

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA01446
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:      Beth Watkins, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Luz Elena D. Chapa, Justice
                 Beth Watkins, Justice

Delivered and Filed: February 17, 2021

AFFIRMED

Appellant G.B. appeals the trial court's order terminating his parental rights to his child,

Z.F.S.[1] G.B. argues the evidence is legally and factually insufficient to support the trial court's

findings under Texas Family Code section 161.001(b)(1)(N) and (O) and that termination is in the

best interest of Z.F.S. We affirm the trial court's order.

### BACKGROUND

Shortly after Z.F.S.'s birth in 2019, the Texas Department of Family and Protective

Services ("the Department") removed her from the custody of her mother, B.B., because Z.F.S.

showed symptoms of drug withdrawal at birth and B.B. admitted to using heroin for the last several

---

[1] To protect the privacy of the minor child, we refer to the child and the parents by their initials. TEX. R. APP. P.
9.8(b)(2).

months of her pregnancy. At that time, B.B. refused to identify Z.F.S.'s father or provide contact information for him. On July 19, 2019, the Department obtained temporary managing conservatorship over Z.F.S. and filed a petition to terminate the parental rights of B.B. and "Unknown Father." The Department also created a family service plan requiring "Unknown Father" to, inter alia, remain drug and alcohol free, submit to drug tests and a psychosocial evaluation, engage in individual counseling, and participate in parenting classes as a condition of reunification.

In November of 2019, B.B. told the Department that Z.F.S.'s father "could possibly" be her cousin, G.B., who had "informed [B.B.] that he had sexual relations with her while she was sleeping" after a night of drinking. On January 2, 2020, the Department filed an amended termination petition naming G.B. and another man as alleged fathers of Z.F.S. The Department located G.B., and in April of 2020, it began communicating with him about this case and the requirements of his service plan. On April 21, 2020, the trial court ordered G.B. to undergo genetic testing. On May 13, 2020, G.B. was incarcerated and remained in jail through trial. On September 1, 2020, the trial court adjudicated G.B. as Z.F.S.'s father.

On September 24, 2020, fourteen months after removal, the trial court held a one-day bench trial at which G.B. appeared telephonically. The trial court heard testimony from: (1) Connie Rosas, the Department's caseworker who initially removed Z.F.S.; (2) Krishelle Peña, the Department's legal caseworker; and (3) G.B. At the conclusion of trial, the court signed an order terminating B.B.'s and G.B.'s parental rights after finding: B.B. engaged in conduct under section 161.001(b)(1)(N), (O), (P), and (R); G.B. engaged in conduct under section 161.001(b)(1)(N) and (O); and termination of both parents' rights was in Z.F.S.'s best interest. G.B. appealed, but B.B. did not.

**ANALYSIS**

G.B. challenges the legal and factual sufficiency of the evidence supporting the trial court's findings under section 161.001(b)(1)(N) and (O). He also challenges the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of Z.F.S.

**_Standard of Review_**

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate G.B.'s parental rights and that termination was in the best interest of Z.F.S. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at

266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could "form a firm belief or conviction" that the matter that must be proven is true, then the evidence is legally sufficient. *Id*. at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Statutory Termination Grounds*

#### *Applicable Law*

In his first and second arguments on appeal, G.B. challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings. When, as here, the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362.

Subsection (N) required the Department to show, by clear and convincing evidence, that Z.F.S. had been in the permanent or temporary managing conservatorship of the Department for not less than six months and: (i) the Department made reasonable efforts to return Z.F.S. to G.B.; (ii) G.B. did not regularly visit or maintain significant contact with Z.F.S.; and (iii) G.B. demonstrated an inability to provide G.B. with a safe environment. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N). "The first element focuses on the Department's conduct; the second and third elements focus on the parent's conduct." *In re A.L.H.*, 468 S.W.3d 738, 744 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

#### *Application*

G.B. does not dispute that Z.F.S. was in the temporary conservatorship of the Department for at least six months. *See* TEX. FAM. CODE § 161.001(b)(1)(N). Nor does he dispute that he did not regularly visit or maintain significant contact with Z.F.S. *See id.* § 161.001(b)(1)(N)(ii). Instead, he argues the Department did not present legally or factually sufficient evidence that it made reasonable efforts to return Z.F.S. to G.B. or that he demonstrated an inability to provide her with a safe environment. *See id.* § 161.001(b)(1)(N)(i), (iii).

#### *Reasonable Efforts to Return the Child*

In evaluating the Department's efforts to return a child to a parent, "the question is whether the Department made reasonable efforts, not ideal efforts." *In re F.E.N.*, 542 S.W.3d 752, 767

(Tex. App.—Houston [14th Dist.] 2018, pet. denied). "Implementation of a family service plan by the Department is considered a reasonable effort to return a child to its parent if the parent has been given a reasonable opportunity to comply with the terms of the plan." *In re A.Q.W.*, 395 S.W.3d 285, 289 (Tex. App.—San Antonio 2013, no pet.), *overruled on other grounds by In re J.M.T.*, No. 04-19-00807-CV, 2020 WL 7633950, at *4 (Tex. App.—San Antonio Dec. 23, 2020, no pet. h.) (mem. op.).[2]

Here, Peña testified that she emailed a service plan to G.B. in April of 2020—five months before trial—and G.B. confirmed to her that he received the plan at that time. Peña also testified that she explained the service plan's requirements to G.B., G.B. stated he was willing to work services, and G.B. understood what was required of him. While G.B. disputed Peña's testimony at trial and testified he did not receive a service plan until shortly before trial, the trial court was free to believe Peña over G.B., and we must defer to that credibility determination on appeal. *See In re J.M.G.*, 608 S.W.3d 51, 56 (Tex. App.—San Antonio 2020, pet. denied).

It is undisputed that G.B. was incarcerated approximately three weeks after the Department explained the service plan to him. However, in reviewing whether the Department made a reasonable effort, we must focus on the Department's actions, not G.B.'s. *See In re A.L.H.*, 468 S.W.3d at 744. Peña testified that before G.B. was incarcerated, she communicated with him via phone and made referrals and appointments so he could begin his services. She specifically noted that she set up individual counseling sessions for him with a counselor. Peña also testified that the providers with whom she had arranged services attempted to contact G.B. but were unable to do

---

[2] In his challenge to the trial court's termination of his parental rights under subsection (O), G.B. argues the service plan was never made into a court order that was enforceable against him. *See* TEX. FAM. CODE § 161.001(b)(1)(O) (requiring the Department to show the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child"). Assuming without deciding that this is correct, we note that subsection (N) does not require the Department's "reasonable efforts" to take the form of a service plan that is enforceable as a court order. *Id.* § 161.001(b)(1)(N).

so because G.B. "went missing" prior to his incarceration. Our sister court recently affirmed a "reasonable efforts" finding under similar circumstances. *See In re G.T.*, No. 02-17-00279-CV, 2017 WL 6759036, at *4 (Tex. App.—Fort Worth Dec. 28, 2017, no pet.) (mem. op.) (holding evidence sufficient to support reasonable efforts finding where Department explained service plan to parent but parent "ran away" and stopped responding to Department's communications two weeks later). Additionally, Peña testified she met with G.B. in person after he was incarcerated.

G.B. notes that the evidence shows: (1) he was incarcerated from May 13, 2020 until the time of trial; and (2) he was not formally adjudicated as Z.F.S.'s father until shortly before trial. For these reasons, G.B. contends this court's opinion in *A.Q.W.* mandates reversal of the trial court's subsection (N) finding. *See In re A.Q.W.*, 395 S.W.3d at 288–89. However, in *A.Q.W.*, the trial court terminated the appellant's parental rights "approximately thirty-four days after appellant received the family service plan, one month after he was determined to be A.Q.W.'s father, and during which time he was incarcerated." *Id.* at 288. Here, in contrast, the Department presented evidence that G.B. received his service plan five months before the September 24, 2020 trial. *See* TEX. FAM. CODE ANN. § 161.002(a) ("Except as otherwise provided by this section, the procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged father."). The Department also presented evidence that G.B. was not incarcerated at that time or when the Department explained the plan's requirements to him. Additionally, while it is true G.B. was not adjudicated as Z.F.S.'s father until shortly before trial, the Department filed a petition alleging G.B. was Z.F.S.'s father in January of 2020, and it is undisputed G.B. became aware of that allegation by April of 2020 at the latest. *See id.*; *In re J.C.*, No. 04-17-00828-CV, 2018 WL 1733139, at *4 (Tex. App.—San Antonio Apr. 11, 2018, no pet.) (mem. op.) (affirming termination under subsection (N) where, although DNA results were not available until shortly before trial, appellant "knew about [the child's] birth from the beginning"); *see also In re M.M.*,

No. 07-19-00324-CV, 2020 WL 1265423, at *5 (Tex. App.—Amarillo Mar. 16, 2020, pet. denied) (mem. op.) (rejecting alleged father's contention that trial court lacked authority to terminate his parental rights under section 161.001 before adjudication of paternity); *In re C.M.C.*, No. 14-12-00186-CV, 2012 WL 3871359, at *3 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op.) (rejecting father's contention that he was not required to comply with court-ordered service plan before adjudication of paternity). G.B. himself testified that on April 1, 2020, he "looked up social services on the kiosk trying to reach out to [caseworker] Peña, letting her know . . . I was trying to reach out to her." He also denied he was waiting on the determination of his paternity before he started working his services. For these reasons, this case is factually distinguishable from *A.Q.W.*

After reviewing the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that the Department made reasonable efforts to return Z.F.S. to G.B. *In re J.F.C.*, 96 S.W.3d at 266. Moreover, after reviewing all the evidence—including the evidence on which G.B. relies—we conclude the evidence contrary to the trial court's finding is not so significant that a factfinder could not have formed a firm belief or conviction in favor of that finding. *In re J.O.A.*, 283 S.W.3d at 345. We therefore hold that legally and factually sufficient evidence supports the trial court's finding on this point, and we overrule G.B.'s arguments to the contrary.

*Inability to Provide Safe Environment*

G.B. also challenges the trial court's finding that the Department met its burden to show he demonstrated an inability to provide Z.F.S. with a safe environment. "[A] child's 'environment' includes more than just the physical condition of his or her home." *In re A.K.L.*, No. 01-16-00489-CV, 2016 WL 7164065, at *8 (Tex. App.—Houston [1st Dist.] Dec. 8, 2016, pet. denied) (mem. op.). That term also "refers to the acceptability of the child's living conditions, as well as a parent's

conduct in the home." *Id.* (internal quotation marks omitted). In determining whether the Department presented sufficient evidence that a parent demonstrated an inability to provide a safe environment for the child, this court has looked to the factors promulgated by the Texas Legislature in section 263.307(b) of the Texas Family Code. *See In re N.A.V.*, No. 04-19-00646-CV, 2020 WL 1250830, at *7–8 (Tex. App.—San Antonio Mar. 17, 2020, pet. denied) (mem. op.); *see also In re G.P.*, 503 S.W.3d 531, 533–34 (Tex. App.—Waco 2016, pet. denied). Section 263.307(b) allows courts to consider, inter alia, "the child's age and physical and mental vulnerabilities," "the frequency and nature of out-of-home placements," "whether there is a history of abusive or assaultive conduct by the child's family," and "the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision." TEX. FAM. CODE ANN. § 263.307(b)(1), (2), (7), (10).

Here, the Department presented evidence that Z.F.S. was conceived when G.B. had sex with his cousin, B.B, while B.B. was "passed out drunk." A reasonable factfinder could conclude this constituted evidence of "abusive or assaultive conduct" by G.B. *Id.* § 263.307(b)(7). The Department also presented evidence that G.B. "went missing" shortly after the Department explained his service plan to him, he did not respond to the Department's subsequent attempts to contact him, and did not begin working his service plan. TEX. FAM. CODE § 263.307(b)(10); *see also In re A.H.*, No. 09-19-00167-CV, 2019 WL 4865196, at *5 (Tex. App.—Beaumont Oct. 3, 2019, no pet.) (mem. op.) (considering parent's failure to maintain contact with the Department or complete any services in safe environment analysis). Additionally, the Department presented evidence that it tried to arrange counseling for G.B., but his assigned counselor was unable to contact him. TEX. FAM. CODE § 263.307(b)(10); *C.G. v. Tex. Dep't of Family & Prot. Servs.*, No. 03-18-00852-CV, 2019 WL 3367524, at *8 (Tex. App.—Austin July 26, 2019, no pet.) (mem. op.) ("When determining whether a parent has demonstrated an inability to provide a child with a safe

environment, the factfinder may consider the parent's . . . missed opportunities for counseling[.]"). Based on G.B.'s disappearance shortly after the caseworker explained his service plan to him, a reasonable factfinder "could form a firm conviction or belief that [G.B.'s actions] did constitute an unwillingness to complete the service plan as well as a rejection of the services offered in the plan." *In re G.T.*, 2017 WL 6759036, at *4; *see* TEX. FAM. CODE § 263.307(b)(10).

Furthermore, while G.B. testified that he has a stable home and income, it is undisputed that at the time of trial, he was incarcerated on pending charges of aggravated assault with a deadly weapon and possession of a firearm. *See In re B.C.*, No. 07-19-00098-CV, 2019 WL 3437756, at *4 (Tex. App.—Amarillo July 30, 2019, no pet.) (mem. op.) (considering father's recent arrest and failure to engage in services in safe environment analysis). Although G.B. testified he had siblings who could care for Z.F.S. while he is incarcerated, he did not give his siblings' names to the Department or ask the Department to consider their homes as possible placements for Z.F.S. Finally, it is undisputed that Z.F.S. has specific medical needs and has spent her entire life in foster care. TEX. FAM. CODE § 263.307(b)(1), (2).

After reviewing the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that G.B. demonstrated an inability to provide a safe home for Z.F.S. *In re J.F.C.*, 96 S.W.3d at 266. Moreover, after reviewing all the evidence—including the evidence on which G.B. relies—we conclude the evidence contrary to the trial court's finding is not so significant that a factfinder could not have formed a firm belief or conviction in favor of that finding. *In re J.O.A.*, 283 S.W.3d at 345. We therefore hold that legally and factually sufficient evidence supports the trial court's finding on this point.

Based on the foregoing, we overrule G.B.'s challenge to the trial court's finding that termination of his parental rights was warranted under subsection (N). We therefore need not

consider his challenge to the trial court's findings under subsection (O). TEX. R. APP. P. 47.1; *In re A.V.*, 113 S.W.3d at 362.

### *Best Interest*

#### *Applicable Law*

Next, G.B. challenges the legal and factual sufficiency of the trial court's order finding that termination of his parental rights was in the best interest of Z.F.S. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015,

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE ANN. § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*.

no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

### *Application*

G.B. argues, "No credible evidence at trial was adduced on even half of the *Holley* factors." As noted above, however, the Department presented evidence that would allow a reasonable factfinder to conclude that G.B. engaged in abusive or assaultive conduct against Z.F.S.'s mother, failed to cooperate with the Department, and did not engage in any services when he had the opportunity to do so. TEX. FAM. CODE § 263.307(b)(7), (10); *Holley*, 544 S.W.2d at 372 (trial court may consider acts or omissions of the parent). The trial court could properly consider this past conduct by G.B. in determining Z.F.S.'s best interest. *In re E.D.*, 419 S.W.3d at 620; *see also In re C.H.*, 89 S.W.3d at 28.

This court has recognized that "the best interest standard does not permit termination [of parental rights] merely because a child might be better off living elsewhere." *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.). Here, however, it is undisputed that Z.F.S., who was fourteen months old at the time of trial, has never met G.B. or lived in his home. As a result, there is no evidence she is bonded to him. *See In re S.M.*, 389 S.W.3d 483, 493 (Tex. App.—El Paso 2012, no pet.). Moreover, the Department presented evidence that Z.F.S. is bonded

with her foster family, with whom she had lived for approximately half her life. TEX. FAM. CODE § 263.307(b)(1), (6). The Department also presented evidence that Z.F.S.'s foster family is capable of meeting her physical, emotional, and educational needs, including the occupational and physical therapy appointments necessitated by her specific medical needs. *See Holley*, 544 S.W.2d at 371–72. Finally, the Department presented evidence that Z.F.S.'s foster family wishes to adopt her. *See Walker v. Tex. Dep't of Family & Prot. Servs.*, 312 S.W.3d 608, 619–20 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

After reviewing the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of G.B.'s parental rights was in the best interest of Z.F.S. *In re J.F.C.*, 96 S.W.3d at 266. Moreover, after reviewing all the evidence, we conclude the evidence contrary to the trial court's finding is not so significant that a factfinder could not have formed a firm belief or conviction in favor of that finding. *In re J.O.A.*, 283 S.W.3d at 345. We therefore hold that legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule G.B.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice