**Affirmed in Part; Reversed and Rendered in Part; and Opinion filed June 16, 2015.**



In The

# Fourteenth Court of Appeals

**NO. 14-14-01029-CV**
**NO. 14-14-01030-CV**

## IN THE INTEREST OF A.L.H., A Child

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-00466J**

## O P I N I O N

T.N.H. ("the mother") appeals the trial court's judgment terminating her parental rights to her child, A.L.H. ("the child") (appeal number 14-14-01029-CV). L.L.M. ("the father") also appeals the trial court's judgment terminating his parental rights to the child (appeal number 14-14-0130-CV). The mother and the father filed separate appellate briefs. We affirm the trial court's judgment as to the mother and, finding the Texas Department of Family and Protective Services ("the

Department") presented insufficient evidence of its reasonable efforts to return the child, we reverse as to the father.

## I. THE MOTHER'S APPEAL

The Department moved to have the parental rights of the mother terminated. *See* Tex. Fam. Code Ann. § 161.001 (West 2014). At the hearing held December 3, 2014, an affidavit of voluntary relinquishment executed by the mother was admitted into evidence without objection. In her first issue, the mother asserts the evidence is legally and factually insufficient for the trial court to have determined that her affidavit of voluntary relinquishment was voluntarily executed.

A trial court may terminate the parent-child relationship if it finds by clear and convincing evidence that the parent has executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by the Family Code and that termination is in the child's best interest. *See id*. § 161.001(1)(K), (2). Section 161.103 of the Family Code lists the requirements for an affidavit of voluntary relinquishment of parental rights. *See* Tex. Fam. Code Ann. § 161.103 (West 2014). Evidence that an affidavit of voluntary relinquishment was signed, notarized, witnessed, and executed in compliance with section 161.103 of the Family Code is prima facie evidence of its validity. *In re D.R.L.M.,* 84 S.W.3d 281, 296 (Tex. App.—Fort Worth 2002, pet. denied).

Section 161.211(c) of the Family Code limits any direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights to issues relating to fraud, duress, or coercion in the execution of the affidavit. *See* Tex. Fam. Code Ann. § 161.211(c) (West 2014).

The mother's affidavit was notarized and signed in the presence of two witnesses. The mother makes no claim, other than alleged involuntariness, that the

2

affidavit was not executed in compliance with section 161.103.[1] The mother argues that it is the Department's burden to negate fraud, duress, or coercion in the execution of the affidavits, citing *In re D.E.H.*, 301 S.W.3d 825 (Tex. App.——Fort Worth 2009, pet. denied.). However, that case holds the opposite. *Id.* at 830 ("The burden of proving such wrongdoing is on the party opposing the affidavit."). Here, the mother is opposing the affidavit, yet presented no evidence of fraud, duress or coercion in its execution.

The mother, who did not appear at the hearing, provides no evidence or argument in her brief that she involuntarily executed her relinquishment affidavit, and the record contains no evidence of fraud, duress, or coercion. Accordingly, we overrule the mother's first issue.

In her second issue, the mother contends the evidence is legally and factually insufficient to support a finding that termination was in the best interest of the child. *See* Tex. Fam. Code Ann. §161.001. The mother declared in her affidavit of relinquishment that termination is in the best interest of the child. In *Brown v. McClennan County Child Protective Services,* 627 S.W.2d 390, 394 (Tex. 1982), the Supreme Court of Texas found "it was the intent of the Legislature to make such an affidavit of relinquishment sufficient evidence on which the trial court can make a finding that termination is in the best interest of the children." *See also In re A.G.C.,* 279 S.W.3d 441, 452 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Lumbis v. Texas Dep't of Protective & Regulatory Servs.*, 65 S.W.3d 844, 851 n.1 (Tex. App.—Austin 2002, pet. denied); *Ivy v. Edna Gladney Home,* 783 S.W.2d

---

[1] The mother's designation in the affidavit of the father's sister, M.M., as the prospective adoptive parent does not affect the voluntariness of the affidavit as the statute does not require the trial court to abide by the parent's choice of a managing conservator expressed in the relinquishment affidavit. *See* Tex. Fam. Code Ann. § 161.103(b)(12); *Dep't of Family & Protective Servs. v. Alternatives In Motion*, 210 S.W.3d 794, 804 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

829, 833 (Tex. App.—Fort Worth 1990, no writ) ("An affidavit of waiver of interest in child, in and of itself, is sufficient to find termination is in the best interest of the child."). Furthermore, the Department's caseworker, Amy Zachmeyer, testified that termination was in the child's best interest. We find the record contains sufficient evidence from which the trial court reasonably could form a firm belief or conviction that termination is in the best interest of the child. The mother's second issue is overruled.

Having overruled both of the mother's issues, we affirm the trial court's judgment terminating the mother's parental rights to the child.

## II.    THE FATHER'S APPEAL

The Department also moved to have the parental rights of the father terminated. *See* Tex. Fam. Code Ann. § 161.001. Following a hearing, the trial court terminated the father's parental rights on the grounds that the father (1) knowingly placed or knowingly allowed  the child to remain in conditions or surroundings which endangered the child's physical or emotional well-being (section 161.001(1)(D)); and (2) constructively abandoned the child (section 161.001(1)(N)).[2] The trial court also determined that it is in the child's best interest to terminate the father's parental rights (section 161.001(2)). *Id*. §§ 161.001(1)(D) & (N); 161.001(2). On appeal, the father asserts the evidence is legally and factually insufficient to support the trial court's judgment on either of the two statutory grounds for termination. *See id*. § 161.001(1)(D), (N). The father does not challenge the trial court's decision that termination was in the child's best interest. *See id*. § 161.001(2).

---

[2] Although requested, the trial court did not file findings of fact and conclusions of law.

4

## A. Burden of Proof and Standards of Review

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. *Id.* § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (West 2014); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). This heightened burden of proof results in a heightened standard of review. *In re C.H.*, 89 S.W.3d at 26 ("[T]he appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations."); *see also In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.— Houston [14th Dist.] 2008, no pet.).

In a legal-sufficiency review, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). This means we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but we do not disregard undisputed facts, regardless of whether they support the finding. *Id.* If we determine no reasonable factfinder could form a firm belief or conviction the matter to be proven is true, we must conclude the evidence is legally insufficient. *Id.*

In a factual-sufficiency review, we give due consideration to evidence the factfinder reasonably could have found to be clear and convincing. *Id.* Our inquiry

is whether the evidence is such that a factfinder reasonably could form a firm belief or conviction about the truth of the Department's allegations. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *Id*. If, in light of the entire record, the disputed evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction, we must find the evidence is factually insufficient. *Id*.

## B. The Evidence

Amy Zachmeyer, the Department's caseworker, testified that during the course of this case she never had face-to-face contact with the father, and at the time of the hearing, had most recently communicated with him a month earlier.[3] According to Zachmeyer, the father has not visited the child at all throughout the case, has not provided anything for the care and support of the child, and has not requested visitation. The father failed to comply with court orders to establish the paternity of the child, did not appear at any of the hearings, and did not appear at trial. The father has four children with the mother and all four have come into the Department's care. The other three children all came into the Department's care due to the mother's drug use before the child was born. One of those children has been placed with a relative, one is in a foster home, and one has been adopted by foster parents. The father was not present when the child was born but knew of the child's birth.

---

[3] Zachmeyer testified the father called "to inform me that he was not a citizen of the United States and that he had received a letter from John Kerry stating that he is a United States National and that the laws of this country do not apply to him and that I should give him his children back." Zachmeyer testified there were concerns about mental health issues with the father. However, the father's mental health was not a basis for the termination of his parental rights.

The child came into the Department's care initially upon a report of medical neglect. Zachmeyer testified there were also concerns due to the family history. Zachmeyer further testified as follows:

Q  Do you believe, based on the mother's prior CPS [Child Protective Services] use -- CPS history and drug use that [the father] had reason to believe that [the child] would be in an environment that was physically or emotionally harmful to him if left in his mother's care?

A Yes.

Q Did [the father] do anything to alleviate those concerns?

A No.

Q In fact, he has never came [sic] to court, correct?

A I don't know if he came to the ex -- or to the original hearing, but he left prior to the status hearing. He has not attended any hearings at this time.

Q Okay. And on multiple other occasions [the father] is suspected to have been using drugs?

A Yes.

According to Zachmeyer's testimony, at the time the child came into care, the mother tried to evade the urine drug screen by cleansing her system with cayenne pepper and refused to submit to a hair follicle drug test. Zachmeyer testified to her belief that the father knowingly placed the child in a dangerous environment by leaving the child with the mother.

The father's sister, M.M. ("the aunt"), testified that she is aware the father went to jail and she is aware of his drug problem, specifically his usage of crack cocaine. The aunt testified that someone else was taking care of the child before the Department became involved because both the mother and the father were in jail. The aunt testified that if the child were placed in her care, she would not allow the parents into the child's life and would protect him.

7

## C. Constructive Abandonment (Subsection N)

To prove constructive abandonment, clear and convincing evidence must establish that the child has been in the custody of the Department for at least six months and: (1) the Department made reasonable efforts to return the child to the parent; (2) the parent has not regularly visited or maintained significant contact with the child; and (3) the parent has demonstrated an inability to provide the child with a safe environment. *See* Tex. Fam. Code Ann. § 161.001(1)(N). The first element focuses on the Department's conduct; the second and third elements focus on the parent's conduct.

If the evidence is legally insufficient on any one of these elements, the termination finding cannot be sustained. *In re D.T.,* 34 S.W.3d 625, 633 (Tex. App.—Ft. Worth 2000, pet. denied). The party seeking the termination of parental rights bears the burden of proof. *In re A.S.,* 261 S.W.3d 76, 90 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Appellant challenges whether there was clear and convincing evidence that the Department made reasonable efforts to return the child to him.

The statute requires clear and convincing evidence that the Department made reasonable efforts to return the child to the parent. Tex. Fam. Code Ann. § 161.001. In accordance with the heightened standard of review that results from this heightened burden of proof, we find the evidence presented at trial is insufficient to support the trial court's conclusion that the Department undertook reasonable efforts to return the child to the father. *See* Tex. Fam. Code Ann. § 101.007; *In re C.H.*, 89 S.W.3d at 25–26; *In re C.M.C.,* 273 S.W.3d at 873.

Generally, implementation of a family service plan by the Department is considered a reasonable effort to return a child to the parent. *In re S.A.C.,* 04-13-

00058-CV, 2013 WL 2247471, at *2 (Tex. App.—San Antonio May 22, 2013, no pet.) (mem. op.). The Department concedes that no plan was created for the father.

A court may waive the requirements of a service plan and make reasonable efforts to return the child to a parent if the trial court finds the parent subjected the child to "aggravated circumstances." Tex. Fam. Code Ann. § 262.2015(a)(West 2014); *see also In re Pate*, 407 S.W.3d 416, 419-20 (Tex. App.—Houston [14th Dist.] 2013 no pet.) (holding that in the absence of aggravating circumstances as defined by section 262.2015, the Department was required to make reasonable efforts to enable the child to return home under section 261.201 of the Texas Family Code). The court can make such a finding if, as may be relevant here, "the parent's parental rights with regard to another child have been involuntarily terminated based on a finding that the parent's conduct violated section 161.001(1)(D) or (E)" or "if the parent's parental rights with regard to two other children have been involuntarily terminated." Tex. Fam. Code Ann. § 262.2015(5) and (7) (West 2014).[4]

The Department did not plead aggravating circumstances in its original petition for termination. The Department's Permanency Plan and Progress Report, filed March 26, 2014, states, "Judge Devlin ordered aggravated circumstances, first permanency hearing on 4/3/14." It is unclear which parent is subject to the alleged finding. Our record does not contain a reporter's record from that hearing or an order signed by the trial judge to that effect. At trial, the Department did not argue aggravating circumstances or offer into evidence any exhibits reflecting the basis for the statement contained in the progress report. The Department also does not argue aggravating circumstances on appeal.

---

[4] The statute lists several other "aggravating circumstances." With no findings of fact to guide us, we decline to discuss all possible factors.

9

Zachmeyer testified that the father was not asked to comply with a family service plan "due to prior termination." However, the record does not reflect that any prior termination was based on a finding that the father's conduct violated subsection (D) or (E). Zachmeyer testified that other children of the father "came into [the Department's] care" due to their mother's drug use, but there is no evidence that the father's parental rights were terminated as to more than one child. Accordingly, the record fails to demonstrate evidence of aggravating circumstances under section 262.2015. To the extent the trial judge may have found aggravating circumstances and waived the requirements of a service plan and the requirement to make reasonable efforts to return the child to the father, there is no support for the finding in this record.

We now consider, therefore, whether the record reflects there were reasonable efforts to return the child in spite of the absence of a family service plan or a waiver of the requirement to make such efforts. *See In re Pate*, 407 S.W.3d at 420. As previously stated, we focus on the Department's efforts, not the father's. Tex. Fam. Code Ann. § 161.001(1)(N)(i). The Department argues the record contains such evidence, relying upon *In re B.S.T.,* 977 S.W.2d 481 (Tex. App.— Houston [14th Dist.] 1998), *rev'd on other grounds by In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

In *In re B.S.T.*, appellant's whereabouts were unknown at the time the children were taken into custody by the Department. *Id.* at 486. When appellant was located after his release from prison, he was advised of visitation and visited his children twice, but made no further efforts. *Id.* Caseworkers advised appellant to sign an affidavit of paternity, but he failed to do so. The Department's caseworker testified that all reasonable efforts were made to return the children to

the parents. The *B.S.T.* court found such evidence sufficient to support termination under subsection N. *Id.*

Here, the Department argues that its actions to serve the father with notice of the suit and the trial court's orders to establish the father's paternity are evidence of the Department's reasonable efforts. The evidence reflects the father had called Zachmeyer, but she had never seen him face-to-face. Zachmeyer did not testify, as did the caseworker in *In re B.S.T.*, that all reasonable efforts were made to return the child to the father. We conclude attempted service of suit and establishment of paternity, standing alone, are insufficient to produce in the trial court's mind a firm belief or conviction that the Department made reasonable efforts at reunification. *See id.*

The Department also argues that its efforts to place the child with the aunt constitute reasonable efforts. However, the record reflects the aunt resides in Arizona and she testified that she would not allow the parents into the child's life. We therefore disagree that the Department's efforts to place the child with the aunt constitute an effort to return the child to the father.

Accordingly, we hold that the evidence is legally insufficient to support the trial court's termination of the father's parental rights under subsection N.[5] The father's first issue is sustained.

---

[5] The father also argued the Department failed to prove that he has demonstrated an inability to provide the child with a safe environment. Tex. Fam. Code Ann. § 161.001(1)(N)(iii). As we already have held that the evidence is legally insufficient as to the second element of subsection N, we need not reach the father's additional argument. If the evidence is legally insufficient on any one element, the termination finding cannot be sustained. *In re D.T.*, 34 S.W.3d at 633.

**D. Endangerment (Subsection D)**

To prove endangerment, there must be clear and convincing evidence that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code Ann. §161.001(1)(D). Subsection D concerns the child's living environment, rather than the conduct of the parent, although the conduct of the parent is relevant to the child's environment. *In re S.M.L.,* 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Subsection D is not a basis for terminating parental rights if the parent was unaware of the endangering environment. *In re Z.C.J.L.,* 14-13-00115-CV, 2013 WL 3477569, at *12 (Tex. App.—Houston [14th Dist.] July 9, 2013, no pet.) (mem. op.); *see also In re T.H.,* 131 S.W.3d 598, 603 (Tex. App.—Texarkana 2004, pet. denied) ("[E]ven if clear and convincing evidence supported the trial court's finding that the environment posed a danger to T.H.'s well-being, the Department failed to show that [the father] knowingly placed or allowed T.H. to remain in such an environment."). However, a parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient. *Id.; see also In re C.L.C.,* 119 S.W.3d 382, 392 (Tex. App.—Tyler 2003, no pet.) ("It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded that risk."). The relevant time period is before the Department removes the child. *In re J.R.,* 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no writ).

Zachmeyer testified that "based on the mother's prior [Department] history and drug use that [the father] had reason to believe that [the child] would be in an environment that was physically or emotionally harmful to him if left in his mother's care." Zachmeyer further testified that the father knowingly placed the

12

child in an environment that was dangerous to the child. No evidence was presented to support Zachmeyer's opinion that the father had knowledge of the mother's drug use, either in the past or present. The record contains no drug test results, criminal records, or prior termination decrees for either parent. Zachmeyer did not present any factual bases to support her conclusory testimony. Unsupported, conclusory opinions of a witness do not constitute evidence of probative force. *In re D.W.*, 01-13-00880-CV, 2014 WL 1494290, at *6 (Tex. App.—Houston [1st Dist.] Apr. 11, 2014, no pet.) (mem. op.). A witness's belief is no more than mere surmise or suspicion, which is not the same as evidence. *Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied).

The record reflects the Department introduced no evidence of the actual physical surroundings or conditions of the child's environment prior to his removal.[6] Moreover, the Department did not introduce legally–sufficient evidence that the father had knowledge of the child's environment at that time. Although there is some evidence of the father's suspected drug use, the record fails to reflect when it occurred or whether it posed a potential danger to the child.

Subsection D unambiguously requires proof that the father knowingly exposed the child to an endangering environment. *See In re J.R.,* 171 S.W.3d 558, 570 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The record contains no evidence that the child was in an endangering environment before the child was taken into the Department's care or that the father knowingly exposed the child to such an environment. We therefore conclude the evidence is legally insufficient to support the termination of the father's parental rights under subsection D and we sustain the father's second issue.

---

[6] Zachmeyer testified that the child came into Department care due to concerns of medical neglect and the mother's drug use. Medical neglect was ruled out.

## CONCLUSION

We affirm the trial court's judgment terminating the mother's parental rights to the child. We conclude the evidence is insufficient to support the termination of the father's parental rights pursuant to subsection D or N. Accordingly, we reverse that portion of the trial court's judgment terminating the father's parental rights to the child, and render judgment denying the Department's request to terminate the father's rights to the child.

No challenge was made to that portion of the trial court's judgment naming the Department as sole managing conservator. The trial court is allowed to appoint the Department as managing conservator of a child without terminating parental rights if the court finds that: (1) appointment of a parent as managing conservator would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development; and (2) it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator. *See* Tex. Fam. Code Ann. § 263.404(a) (West 2014). Here, the trial court made the required best-interest findings to support the appointment of the Department as sole managing conservator of the child. *See id*.; *In re J.A.J.,* 243 S.W.3d 611, 615–17 (Tex. 2007). In this context, a challenge to the appointment of the Department as sole managing conservator of the child is not subsumed in the father's challenge of the termination decision. *In re J.A.J.,* 243 S.W.3d at 615-17. Accordingly, the remainder of the trial court's judgment is affirmed.

/s/    Martha Hill Jamison
       Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby.

14