

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00651-CV

**IN THE INTEREST OF E.L.S.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-02002
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Concurring Opinion by: Liza A. Rodriguez, Justice, joined by Lori I. Valenzuela, Justice

Sitting:        Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: March 8, 2023

AFFIRMED

In this parental rights termination case, the trial court terminated Dad's rights to his child

E.L.S.[i] Dad challenges the legal and factual sufficiency of the evidence supporting the trial court's

findings on statutory grounds (N) and (O), and the best interest of the child.

Because the evidence is legally and factually sufficient to support the findings on ground

(N) and the best interest of the child, we affirm the trial court's order.

### BACKGROUND

In this case, the trial court terminated Mom's and Dad's rights to E.L.S. Because Dad is

the only appellant, we limit our recitation of the facts to those relating to Dad and E.L.S.

---

[i] We use aliases to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

When E.L.S. was born on November 4, 2021, Mom and E.L.S. tested positive for drugs, and E.L.S. suffered from withdrawal symptoms. She was cared for in the NICU, and on November 19, 2021, the Department petitioned to remove E.L.S. The trial court granted the petition, and the Department placed E.L.S. in a foster home.

The Department created a Family Service Plan for Dad—with a goal of family reunification—which the trial court approved on February 3, 2022. Despite Dad being incarcerated during the entire case, the Department's case worker reviewed Dad's progress with him monthly. As the case proceeded, the trial court held four status and permanency hearings. Then, at the September 13, 2022 trial on the merits, the trial court terminated Dad's parental rights to E.L.S.

Dad appeals. He challenges the legal and factual sufficiency of the evidence supporting the trial court's findings on grounds (N) and (O), and E.L.S.'s best interest. Before we address Dad's issues, we briefly recite the applicable evidentiary and appellate review standards.

## EVIDENCE REQUIRED, STANDARDS OF REVIEW

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

The evidentiary standard[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply those standards here.

**STATUTORY GROUNDS FOR TERMINATING DAD'S PARENTAL RIGHTS**

In his first and second issues, Dad challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that his course of conduct met statutory grounds (O) and (N).  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O).  We begin with ground (N).

**A.      Section 161.001(b)(1)(N)**

To prove a parent has constructively abandoned a child, the Department must prove each of the following elements:

> (N) the child . . . has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
> (i)   the department has made reasonable efforts to return the child to the parent;
> (ii)  the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment;

TEX. FAM. CODE ANN. § 161.001(b)(1)(N); *accord In re F.E.N.*, 542 S.W.3d 752, 766 (Tex. App.—Houston [14th Dist.] 2018), *pet. denied sub nom. In re F.E.N.*, 579 S.W.3d 74 (Tex. 2019) (per curiam); *In re K.A.S.*, 399 S.W.3d 259, 263 (Tex. App.—San Antonio 2012, no pet.).

"The first element focuses on the Department's conduct; the second and third elements focus on the parent's conduct."  *In re J.A.*, No. 04-20-00242-CV, 2020 WL 5027663, at *2 (Tex. App.—San Antonio Aug. 26, 2020, no pet.) (mem. op.) (quoting *In re A.L.H.*, 468 S.W.3d 738, 744 (Tex. App.—Houston [14th Dist.] 2015, no pet.)).

**B.      Dad's Arguments**

The record shows that E.L.S. was in the Department's conservatorship for not less than six months, and Dad does not challenge this element.  Additionally, Dad does not challenge the evidence showing he failed to maintain significant contact with E.L.S. and failed to demonstrate his ability to provide E.L.S. with a safe environment.  *See* TEX. FAM. CODE ANN.

§ 161.001(b)(1)(N)(ii) (significant contact), (iii) (safe environment). Instead, Dad argues the Department failed to prove it made reasonable efforts to return E.L.S. to him. *See id.* § 161.001(b)(1)(N)(i) (Department's efforts).

### C. Discerning Reasonable Efforts

"In reviewing the sufficiency of the evidence supporting termination under section 161.001[(b)](1)(N), the issue is whether the Department made reasonable efforts, not ideal efforts." *In re J.A.*, 2020 WL 5027663, at *2 (quoting *In re G.K.G.A.*, No. 01-16-00996-CV, 2017 WL 2376534, at *5 (Tex. App.—Houston [1st Dist.] June 1, 2017, pet. denied) (mem. op.)).

"Generally, implementation of a family service plan by the Department is considered a reasonable effort to return a child to the parent." *In re A.L.H.*, 468 S.W.3d at 744; *accord In re A.M.T.*, No. 14-18-01084-CV, 2019 WL 2097541, at *4 (Tex. App.—Houston [14th Dist.] May 14, 2019, pet. denied) (mem. op.).

### D. Trial Testimony

The trial court heard the following testimony regarding the Department's reasonable efforts to return E.L.S. to Dad.

The Department created a service plan for Dad with a primary permanency goal of family reunification. The caseworker reviewed the plan with Dad, and he understood what the plan required him to do to be reunified with E.L.S. The caseworker met with Dad monthly, and she reviewed his progress with him.

Dad suggested his mother and his sister as family members the Department could place E.L.S. with, and the Department investigated each option. Dad's mother was unable to meet her own financial needs, and Dad's sister initially stated she was unable to care for another child. In late August, Dad's sister texted the Department. The caseworker responded by text; she asked the

sister if she was ready to care for E.L.S. and when the Department could schedule an appointment for a home study. The sister never responded.

In addition, the caseworker attempted to place E.L.S. with Mom's family. She visited Mom's home and conducted a preliminary home study. She testified that the maternal grandparents were not capable of caring for E.L.S. The maternal grandmother had suffered a stroke, and the maternal grandfather's job kept him away from home for most of the week. Mom's sister was also considered as a possible placement, but she was going through a divorce and living in a hotel, and she was unable to provide a stable home.

### E. Department Made Reasonable Efforts

In challenging the Department's reasonable efforts element, Dad argues that he did not have a reasonable opportunity to complete his substance abuse class. The trial court could have considered the Department's actions, including creating a service plan, ensuring he received it and understood it, meeting with him monthly to review his progress, and investigating the placement options Dad and Mom offered, were reasonable efforts. *Cf. In re J.A.*, 2020 WL 5027663, at *3; *In re A.L.H.*, 468 S.W.3d at 744.

Having reviewed the evidence, we conclude the trial court could have reasonably formed a firm belief or conviction that the Department made reasonable efforts to return E.L.S. to Dad. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N); *In re A.M.T.*, 2019 WL 2097541, at *5 ("By implementing a family service plan and notifying Father of the plan and the consequences of failure to comply with the plan, the Department met its burden on the first element."); *In re J.C.*, No. 04-17-00828-CV, 2018 WL 1733139, at *4–5 (Tex. App.—San Antonio Apr. 11, 2018, no pet.) (mem. op.).

**F. Constructive Abandonment**

Because Dad does not challenge any other essential element of ground (N), we conclude the trial court could have "reasonably form[ed] a firm belief or conviction about the truth of the [Department's] allegations," *see In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002), that the Department made reasonable efforts to return E.L.S. to Dad, Dad failed to maintain significant contact with E.L.S., and Dad failed to demonstrate his ability to provide E.L.S. with a safe environment, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(N); *In re J.A.*, 2020 WL 5027663, at *3; *In re A.M.T.*, 2019 WL 2097541, at *4. Therefore, the evidence was legally and factually sufficient to support the trial court's finding that Dad constructively abandoned E.L.S. *See* TEX. FAM. CODE ANN. § 161.001(B)(1)(N); *In re J.A.*, 2020 WL 5027663, at *3; *In re A.M.T.*, 2019 WL 2097541, at *5.

Because only a single statutory ground finding, supported by a best-interest finding, is needed to support an order terminating a parent's rights to a child, *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.), we need not address statutory ground (O), *see* TEX. R. APP. P. 47.1; *In re R.S.-T.*, 522 S.W.3d at 111.

We overrule Dad's second issue.

**BEST INTEREST OF THE CHILD**

In his third issue, Dad argues the evidence was legally and factually insufficient to support the trial court's finding that terminating his parental rights was in E.L.S.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

**A. Best Interest of the Child Factors**

The Family Code statutory factors[5] and the *Holley* factors[6] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the child.

The trial court heard the following testimony.

**B.      Child's Age and Vulnerabilities**

At the time of trial, E.L.S. was about ten months old; she was unable to care for herself, and she had a significant health challenge.  Because of Mom's drug use while she was pregnant with E.L.S., E.L.S. still has difficulty swallowing.  Her foster parents must add a gel to any liquid she drinks to prevent "asphyxiation."  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (6), (8), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C)).

**C.      History of Assaultive Conduct**

In 2021, Dad was convicted of aggravated assault with a deadly weapon for stabbing his own mother.  According to the caseworker, Dad told her that his mother tried to intervene when Dad and Mom were fighting, and Dad stabbed his mother in the shoulder.  Dad admitted that he stabbed his mother because he was "blacked out" under the influence of methamphetamine.  He was sentenced to confinement for two years in the TDCJ-ID.  As a result, Dad was incarcerated when E.L.S. was born and during the entire pendency of the case.  *See* TEX. FAM. CODE ANN. § 263.307(b)(7), (8), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (I)).

**D.      History of Drug Abuse, Criminal Conduct**

When Dad was asked if the only time he had used methamphetamine in his life was when he stabbed his mother, he said "Yes."  When asked to confirm his single-use assertion, he admitted he had used methamphetamine "[a] couple of times."  Notably, in 2018, Dad was arrested for possession of a controlled substance: methamphetamine.  Dad also had a previous conviction for felony theft of a vehicle and two misdemeanor theft convictions.  *See* TEX. FAM. CODE ANN. § 263.307(b)(7), (8); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

**E.      Providing for Child's Needs**

The case worker testified that Dad has not demonstrated he can provide a safe and stable environment for E.L.S.  Dad is currently incarcerated; when he is released his plan is to live with

his mother—who is currently unemployed and unable to meet her own needs. Dad does not have any other relatives who can care for E.L.S., and he did not have any specific employment or housing plans other than to "get a job and do right." *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (11), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H), (I)).

**F.      Child's Placement**

The case worker testified that E.L.S. "has a very special bond with both foster mom and foster dad." The foster parents' two other children "adore [E.L.S.], they love her, and it is mutual." The foster parents are providing a safe, stable home for E.L.S., and they want to adopt her. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

**G.      Ad Litem's Recommendation**

The child's ad litem confirmed that E.L.S. is very bonded to her foster family and her two foster siblings, she is doing well in the placement, and it is in E.L.S.'s best interest that the parents' rights be terminated so E.L.S. can be adopted by her foster family. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

**H.      Sufficient Evidence on Best Interest Finding**

The trial court, as the factfinder, could have believed the evidence regarding Dad's history of domestic violence, drug abuse, criminal conduct, and inability to provide safe and stable housing for E.L.S. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844. The trial court could also have believed that the foster parents were successfully providing a safe, stable home for E.L.S., they were meeting all her needs, and they would continue to do so in the future. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have reasonably formed a firm belief or conviction that it was in E.L.S.'s best interest for

Dad's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Dad's third issue.

### CONCLUSION

Having reviewed the evidence under the applicable standards, we conclude it was legally and factually sufficient to support the trial court's findings on ground (N) and the best interest of the child. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in subsection 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under subsection 161.001(b)(1) may be used in determining the best interest of the child under subsection 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Dad's course of conduct met subsections (N) and (O):

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
> (i) the department has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

[3] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

---

[4] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

    (1)    the child's age and physical and mental vulnerabilities;

    (2)    the frequency and nature of out-of-home placements;

    (3)    the magnitude, frequency, and circumstances of the harm to the child;

    (4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;

    (5)    whether the child is fearful of living in or returning to the child's home;

    (6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

    (7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

    (8)    whether there is a history of substance abuse by the child's family or others who have access to the child's home;

    (9)    whether the perpetrator of the harm to the child is identified;

    (10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

    (11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

    (12)    whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

        (A) minimally adequate health and nutritional care;

        (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

        (C) guidance and supervision consistent with the child's safety;

        (D) a safe physical home environment;

        (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

        (F) an understanding of the child's needs and capabilities; and

    (13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

    (A) the desires of the child;

    (B) the emotional and physical needs of the child now and in the future;

    (C) the emotional and physical danger to the child now and in the future;

    (D) the parental abilities of the individuals seeking custody;

    (E) the programs available to assist these individuals to promote the best interest of the child;

    (F) the plans for the child by these individuals or by the agency seeking custody;

    (G) the stability of the home or proposed placement;

    (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

    (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).