

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE INTEREST OF: | § | No. 08-23-00037-CV |
| M.J.G., | § | Appeal from the |
| a Child. | § | 65th Judicial District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 2022DCM0309) |

## <u>MEMORANDUM OPINION</u>

Appellant M.M. appeals the trial court's order terminating her parental rights and appointing the Department of Family and Protective Services (DFPS) as permanent managing conservator of her child, M.J.G.[1] The trial court terminated M.M.'s parental rights on the predicate ground of constructive abandonment. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N). The trial court further found both that termination of M.M.'s parental rights was in M.J.G.'s best interest and that DFPS should be appointed M.J.G.'s permanent managing conservator. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(2), 161.207. In three issues on appeal, M.M. challenges the legal and factual sufficiency of the evidence to support the constructive abandonment predicate ground for termination, the finding regarding M.J.G.'s best interest, and the permanent managing conservatorship appointment. We affirm the trial court's judgment.

---

[1] To protect the privacy of the parties, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(a), (b)(2).

# I. BACKGROUND

On January 20, 2022, DFPS filed an original petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship, which included an affidavit and request for permission to take possession of a child in an emergency. That day, the trial court ordered the removal of M.J.G. and named DFPS her temporary sole managing conservator. A final hearing was held over Zoom on January 5, 2023, wherein DFPS sought to terminate M.M.'s parental rights.[2] M.J.G. was 16 years old.

## A. Trial testimony

At the final hearing, counsel for M.M. announced not ready and requested a continuance. M.M.'s counsel informed the trial court he had not had contact with M.M. for some time. M.M. was not present on the Zoom and did not respond when her name was called in the trial court's lobby. The trial court denied the request for a continuance and the final hearing went forward without M.M.'s presence. Key witness testimony is summarized below.

### (1) The caseworker's testimony

DFPS case worker Robert Rangel testified M.J.G. entered DFPS's care after M.M. did not assume parental responsibility. M.J.G. was detained for unauthorized use of a vehicle and M.M. refused to pick her up from the detention center.

Rangel first met with M.M. in February 2022. At that time, M.M. did not identify any family member with whom M.J.G. could be placed. Rangel e-filed the family service plan on March 8, 2022. The family service plan includes the following required actions: to "demonstrate [M.M.] is able to provide for [M.J.G.]'s needs"; to "participate and successfully complete

---

[2] DFPS also sought to terminate M.J.G.'s father's parental rights. The father did not appeal the trial court's order and is not a party to the present appeal.

parenting education"; to "participate in a substance abuse assessment and follow all recommendations"; to "participate in random drug tests throughout the course of the case"; to "participate in a psychological evaluation" and "follow through with any recommendations of that evaluation"; and "enroll in counseling services for herself."

On March 11, 2022, Rangel met with M.M. to discuss the family service plan. M.M. refused to sign the plan and told Rangel she would not work with DFPS. Further, M.M. told Rangel to leave her home. On March 16, 2022, Rangel e-filed a statement that he reviewed the family service plan with M.M. in person, but she refused to sign the plan. Rangel sent M.M. a copy of the family service plan via email.

In May or June of 2022, Rangel met with M.M. and went over the family service plan with her. At that time, M.M. agreed to work with DFPS and complete services. Rangel set up a mental health assessment for M.M. M.M. failed to attend and did not complete that assessment. Rangel spoke with M.M. again in late June or early July 2022. M.M. did not provide Rangel with any contact information at that time. Rangel did not hear from M.M. again until November 2022. For a period between June and November 2022, Rangel went on FMLA. While he was on FMLA, another caseworker was assigned to the case. The temporary case worker went to M.M.'s residence several times and was unable to locate her.

M.M. called Rangel in November 2022 asking about M.J.G. Rangel informed M.M. that M.J.G. had been detained and was in a detention center in El Paso. M.M. told Rangel she had left El Paso and did not indicate whether she would be returning. Rangel told her the termination hearing would occur in January 2023. M.M.'s only request was that M.J.G. be placed with her Aunt Toni.

Rangel testified M.M. did not provide him with any certificates of completion for any of the services requested. Further, M.M. did not report to DFPS that she had completed any of the required evaluations. M.M. did not provide Rangel with any contact information for telephonic visitation. However, M.J.G. told Rangel she had spoken with her mother several times.

During the pendency of this case, Rangel attempted to locate family members for possible placement. Rangel spoke with M.J.G.'s grandfather, with whom DFPS was considering placing M.J.G. Rangel also spoke with Aunt Toni, with whom M.M. wanted M.J.G. placed. The aunt was initially interested in caring for M.J.G. but had not answered Rangel's calls after M.J.G.'s second detention. Finally, Rangel asked M.J.G.'s father to identify paternal family members who could care for her, but he refused.

Rangel also testified M.J.G. was then currently placed at the El Paso Juvenile Detention Center and had been there for two months. Before her current detention, M.J.G. had been placed in care in Houston. While there, she received individual and group therapy. Her therapy stopped, however, when she was placed in detention.

Rangel testified M.J.G. has told him she wants to be placed with her grandfather until she reaches eighteen. After that, M.J.G. wanted to "move on with her life." Rangel testified that he believed termination would be in M.J.G.'s best interest. If the trial court terminated M.M. and the father's parental rights, DFPS planned to do a kinship placement with M.J.G.'s grandfather. DFPS also planned to reconnect M.J.G. with therapy services once she was released from detention and placed with her grandfather.

**(2) The probation officer's testimony**

El Paso County probation officer Deborah Ibave testified regarding M.M.'s probation. In July 2019, M.M. was placed on a ten-year probation on a DWI 3rd. As part of her probation, M.M.

was required to complete the following conditions: a VIP class; the DWI repeat offender program; parenting classes; and TAIP assessment. M.M. completed the repeat offender program in April 2021 and the TAIP program in September 2020. M.M had not completed any of the other required conditions.

At the time of the final hearing, M.M. was not in compliance with her probation and had absconded. As of February 2022, there has been an active warrant for M.M.'s arrest. If M.M. were to be detained, the probation department would recommend she be screened to participate in the DWI drug court program.

### (3) The CASA's recommendation

The child advocate Tina Meer was not called as a witness. The trial court, however, asked Meer for a recommendation. Meer stated that she agreed with the recommendation of terminating parental rights.

### B. The trial court's ruling

At the close of the final hearing, the trial court terminated M.M.'s parental rights to M.J.G. The trial court found clear and convincing evidence supported termination based on subsection (N) of § 161.001(b)(1) of the Texas Family Code. The trial court also found that terminating M.M.'s parental rights was in M.J.G.'s best interest. The trial court named DFPS M.J.G.'s permanent managing conservator.[3] Finally, the trial court placed M.J.G. with her grandfather pending DFPS's completion of a home study.

M.M.'s appeal followed.

---

[3] The trial court also terminated the father's parental rights.

## II. Issues on Appeal

In three issues, M.M. challenges the legal and factual sufficiency of the evidence to sustain termination based on subsection (N) of § 161.001(b)(1) of the Texas Family Code, to sustain the trial court's finding that termination was in the best interest of the child, and to sustain the trial court's appointment of DFPS as the child's permanent managing conservator. We address each issue in turn.

## III. Discussion

This case addresses the natural rights of a parent to their children, which are of a constitutional magnitude but not absolute. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). A court may order termination of the parent-child relationship if it finds by clear and convincing evidence: (1) that the parent has committed one or more acts specifically set out in § 161.001(b)(1) of the Texas Family Code; and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(A)-(U), (b)(2); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it is of "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

### A. Standard of review

In a legal sufficiency challenge to a parental termination, the court of appeals "must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof." *In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002). A reviewing court should consider all the evidence in the light most favorable to the finding. *Id.* Considering evidence in the light most favorable means "a reviewing court must assume that the factfinder resolved disputed facts in favor

6

of its finding if a reasonable factfinder could do so." *Id.* at 266. While any evidence contrary to the findings which a reasonable factfinder could have disbelieved is disregarded, the reviewing court should not disregard undisputed facts. *Id.*

In a factual sufficiency challenge to a parental termination, a finding must be upheld "if the evidence is such that a reasonable jury could form a firm belief or conviction that grounds exist for termination under Texas Family Code sections 161.001 and 161.206(a)." *In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002). The reviewing court must consider all evidence the factfinder could reasonably have found to be clear and convincing. *Interest of K.A.C.*, 594 S.W.3d 364, 372 (Tex. App.—El Paso 2019, no pet.). When considering disputed evidence, a reviewing court must consider whether a reasonable factfinder could not have resolved that dispute in favor of its findings. *Id.* If such disputed evidence is so significant a factfinder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## B. The predicate finding: constructive abandonment

M.M.'s first issue challenges the sufficiency of the evidence to support the trial court's termination finding under subsection (N) of § 161.001(b)(1). To terminate parental rights under subsection (N), a trier of fact must find by clear and convincing evidence that the parent has:

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
> (i) the department has made reasonable efforts to return the child to the parent;
>
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
>
> (iii) the parent has demonstrated an inability to provide the child with a safe environment[.]

7

TEX. FAM. CODE ANN. § 161.001(b)(1)(N). Before the trial court may terminate parental rights on constructive abandonment grounds, each of subsection (N)'s three elements must be proven by clear and convincing evidence. *In Interest of A.L.H.*, 468 S.W.3d 738, 744 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "The first element focuses on the Department's conduct; the second and third elements focus on the parent's conduct." *Id.*

As an initial matter, the trial court appointed DFPS M.J.G.'s temporary sole managing conservator on January 20, 2022, and thereafter terminated M.M.'s parental rights on January 6, 2023. Therefore, at the time of termination, M.J.G. had been in the temporary managing conservatorship of DFPS for more than six months.

### (1) Reasonable efforts to return the child

The department has made reasonable efforts to return the child to the parent if it prepares and administers a family service plan. *M.C. v. Texas Dep't of Family & Protective Services*, 300 S.W.3d 305, 309 (Tex. App.—El Paso 2009, pet. denied). Further, reasonable efforts can also be proven if there is clear and convincing evidence that the department undertook efforts to place the child with relatives. *Interest of L.C.M.*, 645 S.W.3d 914, 921 (Tex. App.—El Paso 2022, no pet.).

Here, DFPS prepared a family service plan for M.M. in March 2022. Although M.M. refused to sign the family service plan, Rangel sent her a copy by email. Further, when Rangel met with M.M. in May or June 2022, he explained the family service plan and its requirements to her. Therefore, DFPS prepared and administered a family service plan.

M.M. argues DFPS failed to make reasonable efforts because the only referral Rangel made was for the mental health assessment. M.M. also argues the lack of communication from M.M. was because Rangel was out on FMLA. According to the testimony at the final hearing, Rangel met with M.M. multiple times in person and made the mental health assessment referral. M.M.

failed to attend the assessment, failed to have consistent contact with DFPS, and failed to provide Rangel with contact information. Further, Rangel testified that while he was out on FMLA another case worker was assigned who undertook to find M.M. but was unable to locate her.

Further, Rangel also testified he undertook efforts to place the child with relatives. Rangel asked the father to identify paternal family members; however, the father refused. Rangel also spoke with M.J.G.'s Aunt Toni who was initially willing to care for M.J.G.; however, she stopped answering Rangel's calls. Finally, Rangel identified M.J.G.'s grandfather with whom she was successfully placed after the final hearing.

Considering all the evidence in the light most favorable to the finding, a reasonable factfinder could have formed a firm belief or conviction that DFPS made reasonable efforts to return M.J.G. to her parents. Further, considering all the evidence the factfinder could have reasonably found by clear and convincing evidence that DFPS made reasonable efforts to return M.J.G. to her parents.

### (2) Regular visitation or significant contact

Whether a parent fails to maintain regular visitation or significant contact as required by subsection (N), is a fact specific question. *See M.C.*, 300 S.W.3d at 310 (finding evidence legally and factually sufficient to show parent did not regularly visit or maintain significant contact when the parent only visited the child six to eight times over twelve months); *In re J.J.O.*, 131 S.W.3d 618, 628–29 (Tex. App.—Fort Worth 2004, no pet.) (finding evidence legally and factually sufficient to show parent did not regularly visit or maintain significant contact when the parent regularly cancelled and was late to scheduled visits); *In re H.R.*, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.) (finding evidence was legally and factually sufficient to show parent

did not regularly visit or maintain significant contact when the parent intermittently visited at the beginning of the case but then stopped seeing the child).

In the March 2022 Status Hearing Order, the trial court ordered that visitation between M.M. and M.J.G. must be supervised. M.M. did not provide DFPS with contact information for telephonic visitation. Further, in the six months before the final hearing, M.M.'s only contact with DFPS was a single phone call in November. M.M. failed to appear for the final hearing and had not had recent contact with her attorney. While M.J.G reported to Rangel that M.M. had spoken with her several times over the pendency of this case, details on these conversations, such as length or frequency, were not provided.

After carefully reviewing and considering the evidence in the light most favorable to the finding, a reasonable factfinder could have formed a firm belief or conviction that M.M. did not regularly visit or maintain significant contact with M.J.G.

### (3) Inability to provide the child with a safe environment

A factfinder may consider lack of stability, failure to participate in services, and failure to visit when deciding whether a parent is unable to provide the child with a safe environment. *Interest of J.S.*, No. 02-19-00231-CV, 2019 WL 5655254, at *5 (Tex. App.—Fort Worth Oct. 31, 2019, pet. denied); *see also M.C.*, 300 S.W.3d at 310 (finding evidence legally and factually sufficient to show parent was unable to provide child with a safe environment when the parent lacked stability and failed to complete recommended therapy and parenting classes). The trial court heard evidence M.M. did not provide any certificates of completion or report she had completed any evaluations or services required by the family service plan. M.M. did not cooperate and failed to maintain contact with DFPS throughout the pendency of this case. Finally, M.M. failed to appear at the final hearing.

10

M.M. argues that her completion of some probation requirements—a repeat offender course and outpatient treatment—may demonstrate she is able to provide M.J.G. with a safe environment. Those probation requirements were completed in 2021 and 2020, respectively. M.J.G. was not removed from the home until January 2022. Therefore, M.M.'s completion of these requirements predates this case. After carefully reviewing the evidence in the light most favorable to the finding, a reasonable factfinder could have formed a firm belief or conviction that M.M. was unable to provide M.J.G. with a safe environment.

Therefore, viewing the evidence with deference to the factfinder's conclusions and indulging every reasonable inference, we hold there is legally sufficient evidence to support the trial court's finding that M.M. constructively abandoned M.J.G. under subsection (N). Accordingly, we find that the evidence is legally sufficient to support the trial court's finding.

Further, we conclude that after considering all the evidence, the evidence presented permits a reasonably factfinder to form a firm belief or conviction that M.M. constructively abandoned M.J.G. Therefore, there is factually sufficient evidence to support the trial court's predicate finding under subsection (N) of § 161.001(b)(1) of the Texas Family Code.

We overrule M.M.'s first issue.

### C. The child's best interest

M.M.'s second issue challenges the sufficiency of the evidence to support the trial court's finding on M.J.G.'s best interest. A trial court's order terminating parental rights requires the existence of a predicate ground and a finding the termination is in the child's best interest. *Interest of G.C.S.*, 657 S.W.3d 114, 133 (Tex. App.—El Paso 2022, pet. denied). There is a strong but rebuttable presumption that it is in the child's best interest to preserve the parent-child relationship.

11

*In Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). When analyzing the best interests of the child, we consider the *Holley* factors:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). "While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child." *In Interest of J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)) (citing *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).

At the time of trial, M.J.G. was 16 years old. Rangel testified that M.J.G. wanted to be placed with her grandfather. Therefore, the child's desires factor weighs in favor of the best interest finding.

DFPS became involved in this case because M.M. refused to assume parental responsibility and pick M.J.G. up from the detention center. Throughout the pendency of the case, M.M. has refused to complete any of the requested services. M.M. further had only sporadic contact with M.J.G. In M.J.G.'s sporadic contact with DFPS and M.J.G., her only plan was for her child to live with an aunt. M.M. reported to Rangel that she had left El Paso and did not give any indication that she would return. M.M. failed to attend the final hearing.

After reviewing the evidence with deference to the factfinder's conclusions and indulging every reasonable inference, a reasonable factfinder could have formed a firm belief or conviction

that termination of M.M.'s parental rights was in the child's best interest. M.M. did not participate in services, had sporadic contact with DFPS, had only sporadic contact with M.J.G., and has left El Paso with no indication she will return. *See In re A.B.*, 269 S.W.3d 120, 129 (Tex. App.—El Paso 2008, no pet.) (finding evidence sufficient to support a best interest finding where the parent refused to participate in services, did not stay in contact with the department, and refused to provide the department with contact information). We conclude the evidence supporting the best interest finding is supported by both legally and factually sufficient evidence.

We overrule M.M.'s second issue.

### D. Permanent managing conservatorship

In her third issue, M.M. argues the trial court's appointment of DFPS as M.J.G's permanent managing conservator was not supported by legally or factually sufficient evidence. Here, the trial court appointed DFPS M.J.G.'s permanent managing conservator and placed her with her grandfather.

When parental rights are terminated, the trial court must appoint a managing conservator for the children. TEX. FAM. CODE ANN. § 161.207(a). Conservatorship determinations are reviewed for an abuse of discretion and are reversed only if the decision is arbitrary and unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). The termination of parental rights divests the parent of all legal rights and duties to the child. TEX. FAM. CODE ANN. § 161.206(b). Once a court of appeals overrules a parent's challenge to an order terminating parental rights, the trial court's appointment of DFPS as managing conservator can be considered a consequence of termination. *Interest of J.D.G.*, 570 S.W.3d 839, 856 (Tex. App.—Houston [1st Dist.] 2018, pet. denied)).

13

Because we have overruled M.M.'s challenge to the trial court's order terminating her parental rights, she no longer has legal rights or duties to M.J.G. *See* TEX. FAM. CODE ANN. § 161.206(b); *Interest of J.D.G.*, 570 S.W.3d at 856. Therefore, M.M. does not have standing to challenge the portion of the trial court's order appointing DFPS as the permanent managing conservator. *See Interest of J.D.G.*, 570 S.W.3d at 856 (holding that a parent whose termination of parental rights was affirmed, could not challenge a conservatorship determination).

We overrule M.M.'s third issue.

## IV. CONCLUSION

We affirm.

GINA M. PALAFOX, Justice

June 7, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.